UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAGARION BROWN, ROY JACKSON, YAPHETT SAUNDERS, ISAAC SAUNDERS, HAKEEM ALLAMBIE, and NICHLON GARRETT, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>TETRA TECH, INC., JESCO ENVIRONMENTAL AND GEOTECHNICAL SERVICES, INC., and DOES 1-20,<br><br>Defendants. | No. 2:20-cv-01133-DJC-DMC<br><br><br>ORDER |

Plaintiffs Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac Saunders, Hakeem Allambie, and Nichlon Garrett move for preliminary approval of settlement of their class, Fair Labor Standards Act ("FLSA") collective, and Private Attorney General Act ("PAGA") claims (the "Motion" or "Mot."). (Mot. (ECF No. 36).) By and through this Motion, Plaintiffs seek: (1) conditional certification of the settlement class and FLSA collective; (2) preliminary approval of the settlement; (3) approval of the class notice; (4) appointment of Plaintiffs as class representatives; (5) appointment of Plaintiffs' counsel as class counsel; (6) appointment of the settlement administrator; and (7) scheduling final approval of the settlement.

The Court has considered the Motion before it and is prepared to find that the Parties have satisfied the requirements for conditional certification of the class and FLSA collective,[1] appointment of the class representatives, appointment of class counsel, and appointment of the settlement administrator at this preliminary stage. However, the Court has noted below several concerns with regards to the proposed settlement terms and the notice of settlement which must be addressed before the Court can properly consider preliminary approval of the settlement. Thus, for the reasons set forth below, this Motion is DENIED without prejudice.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed a complaint June 3, 2020 seeking redress for themselves and approximately 230 similarly situated environmental technicians who were employed by Defendants to perform post-disaster assessments and cleanup in Butte County, California between June 3, 2016 and May 1, 2022. (Mot. at 1; Second Am. Compl. (ECF No. 15) ¶¶ 13–18, 55–181) The complaint is styled as a putative Federal Rule of Civil Procedure 23 ("Rule 23") class, FLSA collective, and PAGA action alleging that Defendants "maintained and enforced [] labor policies against employees that revolve[d] around [(1)] Defendants' hourly system of compensation, [(2)] their meal

---

[1] The Court notes, however, that the Motion lacks detailed information regarding the makeup of the Class. Plaintiffs provide no details concerning the Class members' similarities to one another besides describing the Class as comprised of environmental technicians performing post-disaster assessment and clean-up, leaving unanswered questions that could affect the Court's ultimate approval of the settlement. Notably, the Motion fails to state if all Class members were compensated in the same, or similar, manner, and at the same, or similar, rate, during the relevant period. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. 2015). Should the parties choose to renew their request for preliminary approval, they may consider providing further details demonstrating the proposed Class members' similarities. At the very least, these details will be required before the final approval hearing. In addition, declarations of similarly situated employees can support the plausibility of material similarities among FLSA collective members. *See Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666-W-WMC, 2008 WL 1860161, at *3 (S.D. Cal. 2008) ("Plaintiffs have the burden of making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage a defendant's affidavits to the contrary."); *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *8 (E.D. Cal. Jan. 22, 2019) (considering declarations of putative FLSA collective members). While not required at this stage, *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1109 (9th Cir. 2018), declarations could help supply necessary details to complete the record by the time of final approval.

and rest break practices, [(3)] their practices around indemnification of expenditure by employees, and [(4)] their record-keeping procedures" in violation of the California Labor Code ("Labor Code") and federal law. (Second Am. Compl. ¶¶ 27–33; Settlement (ECF No. 36-3) § II.A.) The Parties exchanged discovery and agreed to settle after mediating in February 2022. (Mot. at 1, 3–4.) After several months of negotiating final terms, the parties reached the settlement agreement now presented to this Court. (*Id.* at 4, 11.)

**PROPOSED SETTLEMENT TERMS**

The proposed class to be certified (the "Class") comprises all non-exempt employees of Defendant JESCO Environmental and Geotechnical Services, Inc. ("JESCO") who worked on projects subcontracted by Defendant Tetra Tech, Inc. ("Tetra") between June 3, 2016 and May 1, 2022. (Settlement § I.B.) Members of the Class include employees who belong to one or more of the following three subsets: the Rule 23 Class,[2] the PAGA Class,[3] and the FLSA Collective.[4]

The Parties have agreed to settle the claims for $600,000 total, with no part of the settlement reverting to Defendants under any circumstances. (*Id.* §§ I.O, III.A.) The settlement proposes several deductions from the total amount before it is distributed to the Class: (1) up to 33 percent, or $200,000, in attorney's fees, (2) litigation expenses estimated at $18,000, (3) up to $10,000 to each of the six Class representatives, (4) $50,000 to PAGA claims, $37,500 of which will be paid to the California Labor and Workplace Development Agency ("LWDA"), *see* Cal. Lab. Code

---

[2] All persons who were employed by JESCO as non-exempt employees in California and who worked on projects subcontracted by Tetra at any time between June 3, 2016, and May 1, 2022. (Settlement § I.B.1.)

[3] All persons who were employed by JESCO as non-exempt employees in California and who worked on projects subcontracted by Tetra at any time between May 11, 2019 and May 1, 2022. (*Id.* § I.B.2.)

[4] All persons who were employed by JESCO as non-exempt employees in the United States who worked on projects subcontracted by Tetra at any time between June 3, 2017 and May 1, 2022. (*Id.* § I.B.3.)

1  § 2699(i), with the remaining $12,500 paid to the PAGA Class, and (5) fees not to
2  exceed $5,000 to the settlement administrator. (Settlement § III.B; Decl. of Stan
3  Mallison ("Mallison Decl.") (ECF No. 36-2) ¶ 22.) The Parties do not allocate any
4  payments toward the FLSA Collective. (*See generally* Settlement § III.B.)

5  Overall, the settlement provides a net settlement amount of approximately
6  $279,500. (Mot. at 5.) The net settlement will be distributed to Class members on a
7  *pro rata* basis based on the number of workweeks worked by each member. (*Id.* at 6;
8  Settlement § III.D.1.) After 180 days, any unclaimed funds will be sent to a *cy pres*
9  beneficiary. (Settlement § III.E.6; Mallison Decl. ¶ 24.)

10  If the settlement is approved, Plaintiffs and Class members, other than those
11  who elect not to participate in the settlement, will release their FLSA and state labor
12  law claims. (Settlement § III.G; Notice (ECF No. 36-4) § IV.) Members of the Rule 23
13  Class may opt out or object before the final approval hearing. (Notice § V.)
14  Membership in the PAGA Class is automatic under California law. *Alcazar v. OEI*
15  *Holdings, LLC*, No. 2:19-cv-01209-KJM-AC, 2023 WL 2876833, at *2 (E.D. Cal. Apr. 10,
16  2023). The settlement provides that Class members can opt into the FLSA Collective
17  by cashing their settlement check. (Settlement § III.E.2.d.) However, the Parties'
18  proposed notice of settlement does not clearly explain member's rights regarding the
19  FLSA Collective. (*See generally* Notice.)

20  Plaintiffs move the Court to preliminarily approve the settlement. (Mot.) The
21  Motion is unopposed. The Court submitted the matter without a hearing. (Order
22  Reassigning Case (ECF No. 44).)

## LEGAL STANDARDS

24  Plaintiffs seek preliminary approval of a settlement which would resolve the
25  state labor law and FLSA claims. Different legal standards apply to Rule 23 and FLSA
26  actions. Under Rule 23, a court must determine if it "will likely be able to" both (1)
27  "certify the class for purposes of the judgment on proposal" under Rule 23(a) and
28  23(b), and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B).

4

Under the FLSA, a court must ask if members of the collective action are "similarly situated" to the original plaintiffs, *see Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018), and whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018).

Courts must also consider if the proposed notice meets the requirements of both Rule 23 and the FLSA. For classes likely to be certified under Rule 23(b)(3) "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," imposing specific requirements on the contents of the notice. *See* Fed. R. Civ. P. 23(c)(2)(B). The FLSA, although less specific, provides "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," 29 U.S.C. § 216(b), which courts have understood as requiring written consent filed with the court. *See, e.g., Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("[E]mployees . . . become parties to a collective action only by filing written consent with the court." (citation omitted)). In addition, in hybrid Rule 23 and FLSA actions, the parties' notice forms must indicate "(1) the hybrid nature of th[e] action; [] (2) the claims involved in th[e] action; (3) the options that are available to [] class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection [*sic*] action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778–CAB–WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (quoting *Pierce v. Rosetta Stone, Ltd.*, No. 4:11-cv-01283–SBA, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)).

////

**ANALYSIS**

**I.   Proposed Settlement**

    **A.   Adequacy of the Settlement Amount**

Under Rule 23(e), a class action may be settled "only with the court's approval," and the court may provide such approval "only on finding that it is fair, reasonable, and adequate" after considering whether, among other things, "the relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2).

The Court does not have sufficient information at this juncture to determine if the relief provided to the Class is adequate.  As explained by Plaintiffs' counsel, before reaching settlement they obtained Defendants' payroll and timekeeping information and performed detailed expert analysis to inform their settlement negotiations, which yielded estimated damages, penalties, and interest of $1,354,302.[5]  (Mallison Decl. ¶¶ 29, 32.)  The Parties' total settlement amount, $600,000, represents approximately forty-four percent of the theoretical maximum recovery.

Several factors led to this discounted settlement.  Of note, Plaintiffs' counsel explains that, at the time of settlement, the *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93 (2022)[6] matter had not yet been decided by the California Supreme Court, creating uncertainty as to whether Plaintiffs' meal break claim would "readily"

////

////

---

[5] Plaintiffs estimated the damages for meal period violations to be approximately $338,961 in unpaid premium wages, including interest. (Mallison Decl. ¶ 32.)  Derivative of those damages were an array of penalties directly recoverable under the Labor Code, and under the same provisions through PAGA, for failure to timely pay wages upon termination under section 203, amounting to $736,581, and for failure to issue accurate wage statements under section 226, amounting to $130,300. (*Id.*)  Plaintiffs also roughly estimated an average of 30 minutes of off-the-clock work per shift, placing damages for that time at approximately $148,460. (*Id.*)

[6] The court in *Naranjo* held that premium payments owed for noncompliant meal breaks are wages which can subject employers to additional penalties for inaccurate wage statements and late payment of final wages because pay for a missed meal or rest break "compensates for work the employee performed during the break period" and thus "constitutes wages subject to the same timing and reporting rules as other forms of compensation for work."  13 Cal. 5th at 102.

support awards of wage statement and waiting time violations, and whether this would, in turn, truncate Plaintiffs' PAGA claim.[7] (Mallison Decl. ¶ 30.)

The Court finds Plaintiffs' explanation of *Naranjo's* impact on the settlement negotiations unsatisfactory. While *Naranjo* had not been decided at the time of settlement, it had been decided by the time the settlement agreement was executed and appears highly relevant to the Court's evaluation of the proposed settlement before it now. Plaintiffs' counsel does not address whether the ultimate settlement figure was negotiated before or after *Naranjo* was decided, and, if it was before, whether the Parties adjusted the settlement amount once *Naranjo* provided clarification. Should the Parties renew their motion for preliminary approval, they are directed to clarify if the current proposed settlement is reasonable and adequate under *Naranjo*, or, in the alternative, submit an amended settlement for the Court's consideration. The Parties may wish to provide copies of the damages assessment and model prepared by Plaintiffs' expert along with any renewed motion.

**B.    PAGA Component**

Under PAGA, aggrieved employees may bring an action for civil penalties for Labor Code violations on behalf of themselves and other current or former employees. Cal. Lab. Code § 2699(a).[8] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies," and a judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias v. Superior*

---

[7] In addition, Plaintiffs noted that even if they prevailed on wage and break violation claims, they faced legal obstacles in obtaining other derivative damages and penalties. (Mallison Decl. ¶¶ 33-34.) Plaintiffs concluded that the class settlement amount of $600,000 was reasonable and adequate given that Defendants are represented by zealous counsel and are prepared to vigorously defend against these claims if the action is not settled; Plaintiffs would face significant risks that issues could be resolved in Defendants' favor at trial; and further litigation or trial of the matter would substantially delay any compensation to Class members. (*Id.* ¶ 35.)

[8] An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

7

*Court*, 46 Cal. 4th 969, 986 (2009). Courts will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals. *See Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902–DAD–SKO, 2020 WL 5095885, at *6 (E.D. Cal. Aug. 28, 2020).

The Court notes that the parties have submitted the proposed settlement to the LWDA for comment as required under the Labor Code. (LWDA Submission (ECF No. 36-5);) Cal. Lab. Code § 2699(l)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court."). If the settlement is amended in response to this Order, the Parties will need to submit the amended proposal to the LWDA before renewing their motion for preliminary approval.

Courts must also consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citation omitted); *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971–72 (N.D. Cal. 2019). The determination of fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following: the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel. *See Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

Here, the proposed PAGA settlement is $50,000, or 12% percent of the gross settlement amount. (Settlement § III.B.3.) Plaintiffs' counsel explains that the array of penalties potentially recoverable under the Labor Code, and under the same provisions through PAGA, were $736,581 under section 203, and $130,300 under section 226, amounting to $866,881 total. (Mallison Decl. ¶ 32). Plaintiffs' counsel maintains that, in addition to the overall settlement being reasonable, the allocation of $50,000 to PAGA claims is reasonable "as the class claims for unpaid wages and

1  meal/rest break violations formed the primary basis for liability, as opposed to the
2  PAGA claim . . . ," (Mallison Decl. ¶ 36), and while "Plaintiffs' claim under PAGA would
3  have entitled them to a hefty award of penalties if they prevailed, [] it was likely that
4  such penalties would have been reduced as 'unjust, arbitrary and oppressive, or
5  confiscatory.'" (Mot. at 10–11.)

6  Although settlements with PAGA penalties accounting for 12% of the gross
7  settlement amount fall within the range previously approved in this district,[9] should
8  the Parties choose to renew their motion for preliminary approval, they will need a
9  more thorough explanation of why the PAGA allocation is fair and reasonable,
10 including further support for their assertion that the penalties would likely have been
11 reduced.  As noted above, the parties should also address whether this PAGA
12 settlement is still reasonable in light of the *Naranjo* decision or must be adjusted.  *See*
13 Section I.A *supra*.

14 **C.    FLSA Component**

15 In the absence of Supreme Court or Ninth Circuit guidance, district courts in
16 this circuit have often followed the Eleventh Circuit and assessed whether the
17 settlement is "a fair and reasonable resolution of a bona fide dispute" over FLSA
18 provisions under *Lynn's Food Stores*.  *See, e.g., Kerzich*, 335 F. Supp. 3d at 1184.  A
19 dispute is "bona fide" if there are "legitimate questions" about the existence and
20 extent of defendant's FLSA liability.  *Id.*; *see also Selk v. Pioneers Mem'l Healthcare*
21 *Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

22 If a bona fide dispute between the parties exists, courts will often consider
23 many of the same factors that guide preliminary certification of Rule 23 class actions in
24 evaluating the fairness of the FLSA settlement.  *See Maciel*, 2018 WL 5291969, at *4.

---

[9] *See, e.g., Martinez v. Semi-Tropic Coop. Gin*, No. 1:19-cv-1581 JLT CDB, 2023 WL 3569906 (E.D. Cal. May 19, 2023) (approving 12 percent of total settlement as PAGA penalties); *Rodriguez v. RCO Reforesting, Inc.*, No. 16-2523, 2019 WL 331159 (E.D. Cal. Jan. 24, 2019) (approving 6 percent of total settlement as PAGA penalties); *Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 16-1747, 2018 WL 746393 (E.D. Cal. Feb. 6, 2018) (approving 1 percent of total settlement as PAGA settlement).

9

Only settlements that reflect a fair and reasonable compromise of issues actually in dispute may be approved by the court. *Kerzich*, 335 F. Supp. 3d at 1185. Because a release of FLSA claims in exchange for no consideration is not a "fair and reasonable" resolution of a dispute, "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *Thompson*, 2017 WL 697895, at *8; *see also Millan*, 310 F.R.D. at 602 (noting that "creation of separate settlement funds for the FLSA class and the Rule 23 class . . . would better protect absent class members"); *Khanna v. Intercon Sec. Sys.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *2 (E.D. Cal. Apr. 8, 2014) (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce*, 2013 WL 1878918, at *3 (same).

The Court has concerns as to whether there is a bona fide dispute about FLSA liability. Plaintiffs allege in their complaint that they and similarly situated employees regularly worked over 12 hours per day, and typically worked approximately 10 off-the-clock hours per week, per employee. (Second Am. Compl. ¶¶ 28–30.) However, Plaintiffs' counsel now admits that that "Plaintiffs lack[] concrete evidence to prove [unpaid wage claims under the Labor Code and FLSA] on a *class-wide basis*." (*See* Mallison Decl. ¶ 32 (emphases added).) This begs the question: was evidence of unpaid wage claims weak across the FLSA Collective? Or did any members possess viable FLSA claims against Defendants?

Moreover, the settlement does not allocate the specific value of releasing the contested FLSA claims. (*See* Settlement § III.B.) Despite lacking evidence for their unpaid wage claims, Plaintiffs "estimate[d] an average of 30 minutes of off-the-clock work per shift" and placed damages at approximately $148,460 for unpaid wage claims under the Labor Code and FLSA, (Mallison Decl. ¶ 32,) but failed to clarify what portion of these estimated damages relate specifically to FLSA claims. With none of the settlement expressly allocated toward the FLSA Collective, the only conclusion the

Court can draw at the moment is that the settlement assigns the FLSA claims no value. However, a settlement calling "for a release of the FLSA claim in exchange for no consideration does not appear to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Maciel*, 2018 WL 5291969, at *6 (internal quotation marks omitted). Thus, the Plaintiffs must clarify the strength and value of the FLSA claims released before the Court can consider preliminarily approval of the settlement agreement including by providing the Court with any helpful analysis performed by Plaintiffs' expert if appropriate. *See, e.g., Alcazar*, 2023 WL 2876833, at *3 (granting renewed motion for preliminary approval of class settlement in part because the parties clarified the approximate value of the FLSA claims to be released).[10]

### D. "Clear Sailing" Provision

One oft-cited red flag of an unfair settlement is a "clear sailing" arrangement "providing for the payment of attorneys' fees separate and apart from class funds" without defense objection; indeed, "[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947–48 (9th Cir. 2011) (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).

The settlement contains "clear sailing" provisions, under which Defendants agree not to challenge Plaintiffs' motion for attorneys' fees up to $200,000 or incentive awards to Plaintiffs of up to $10,000. (Settlement § III.B.) In conjunction with the relatively large percentage of the award that would go toward attorney's fees and the large incentive award, these provisions create an inference of a collusive settlement.

---

[10] Specifically, the parties "estimate[d] the value of FLSA claims to be $146,765. 'Because those damages [were] also recoverable under California law,' [they] divided the number in half, and 'approximate[d] the value of the FLSA claims' for class collective members w[ould] be $73,382.50. This amount cover[ed] the claims for 'pre- and post-shift work performed off-the-clock' during the '704 days in the applicable FLSA limitations period.'" *Alcazar*, 2023 WL 2876833, at *3.

11

The clear sailing provisions therefore merit a high degree of scrutiny. If the Parties choose to retain these provisions in their settlement moving forward, the Court will expect a robust showing of fairness at the final approval stage.

## II. Proposed Notice

### A. Rule 23 Notice

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain, in plain and clear language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the right of a class member to appear through an attorney, if desired; (5) the right to be excluded from the settlement; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. *Id.* A settlement notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The notice will be mailed to the last known address of each putative class member with use of a diligent search for each notice returned as undeliverable, which satisfies the procedural aspect of Rule 23. (Notice § III.E.2.f–h;) *Millan*, 310 F.R.D. at 608.

Substantively, the notice explains in plain language the parties to the lawsuit, the definition of the Class certified, the claims at issue, and the terms of the settlement. (*See* Notice §§ I-II.) It also explains each Class member's projected share of the settlement and explains what claims will be released. (*Id.* §§ III-IV.) It provides instructions on how to object or opt out with deadlines. (*Id.* § V.) Finally, it informs Class members that they will be bound by the release of claims if they do not opt out. (*Id.*)

The notice, however, fails to inform potential Class members of their right to appear through an attorney, if desired.  The notice must also be updated to indicate the final approval hearing will be held before this Court.  The parties should correct these points in the proposed notice.

### B.    FLSA Notice

Courts require a separate opt-in procedure for FLSA claims when the settlement includes both Rule 23 and FLSA claims.  *See Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 WL 5963648, at *9 (S.D. Cal. Nov. 13, 2019) (collecting authorities).  Moreover, as this is a hybrid action, the notice forms must indicate (1) that the action is hybrid in nature, (2) the claims involved, (3) the options that are available to Class members, including how to participate or not participate in the Rule 23 Subclass and FLSA Collective, and (4) the consequences of opting-in to the FLSA Collective, opting-out of the Rule 23 Subclass, or doing neither.  *Thompson*, 2017 WL 697895, at *8.

The Court notes several deficiencies with the proposed FLSA notice.  Procedurally, under the current settlement, Class members opt into the FLSA Collective and release their FLSA claims when they cash their settlement check.  (Settlement §§ III.E.2.d, III.G.)  This proposed opt-in by check procedure fails to satisfy the FLSA, which requires written consent from members who wish to opt in to an FLSA collective.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Smothers*, 2019 WL 280294, at *10 (holding § 216(b)'s written consent requirement was not satisfied where parties proposed FLSA opt-in procedure by endorsing back of check).

Substantively, the proposed notice plainly states "[t]his Notice only affects your rights with respect to your status as Rule 23 Class Member," and fails to clearly address the options available to FLSA Collective members in connection with the settlement, as well as the consequences of these options.  The most that is said

concerning the settlement is that the net settlement amount will be distributed to members of the FLSA Collective who affirmatively opt-into the settlement by cashing their checks.  (Notice § II.)  The settlement dictates that the following language will appear on the reverse side of settlement checks issued to Class members included within the FLSA Period: "By cashing this check, I am opting into *Lagarion Brown, et al. v. Tetra Tech, Inc., et al*, Case No. 2:20-CV-01133-JAM-DMC, pursuant to 29 U.S.C. § 216(b), and I hereby release the Released Claims as provided in the Agreement."  (Settlement § III.E.2.d.)  However, this language fails to address the concerns stated above, and would only reach potential FLSA Collective members after the final approval hearing, denying them a chance to participate fully in the hearing.

The proposed FLSA opt-in procedure and notice are thus defective and must be cured before the Court can properly evaluate them.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that Plaintiffs' Motion (ECF No. 36) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   **June 23, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – brown20cv01133.prelimapprovalclasssettlement