UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAGARION BROWN, et al.,

Plaintiffs,

v.

TETRA TECH, INC., et al.,

Defendants.

No. 2:20-cv-01133-DJC-DMC

ORDER

Plaintiffs move for preliminary approval of their amended class action settlement.  (Mot. (ECF No. 46).)  The Motion is GRANTED in part and DENIED in part.

Specifically, the Court will GRANT conditional certification of the settlement class and FLSA collective, appoint the class representatives, appoint class counsel, and appoint the settlement administrator.

However, for the reasons set forth below, the Court will DENY preliminary approval of the settlement and class notice without prejudice to remedy issues related to the PAGA claims.  Plaintiffs are granted forty-five (45) days to submit an amended settlement and notice.  At such time, if the settlement and notice adequately address the Court's concerns, the Court will schedule a final approval hearing for the settlement.

////

1

# FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac Saunders, Hakeem Allambie, and Nichlon Garrett seek approval of their amended $600,000 Federal Rule of Civil Procedure 23 ("Rule 23") class, Fair Labor Standards Act ("FLSA") collective, and Private Attorney General Act ("PAGA") settlement on behalf of themselves and approximately 230 similarly situated environmental technicians who were employed by Defendant Jesco Environmental and Geotechnical Services, Inc. ("Jesco") to perform post-disaster assessments and cleanup in Butte County, California for Defendant Tetra Tech, Inc. ("Tetra") between 2016 and 2022.  (Mot. at 1; Second Am. Compl. ("SAC") (ECF No. 15) ¶¶ 13–18, 55–181.)

Plaintiffs brought this action on June 3, 2020, alleging unpaid wage, meal and rest break, and expense reimbursement violations under the California Labor Code ("Labor Code") and federal law.  (SAC ¶¶ 27–33; Mot. at 1.)  The basis for these claims was Defendants' alleged failure to provide compliant meal periods.  (Mot. at 1.)

The Parties exchanged discovery and agreed to settle after mediation in February 2022.  (Mot. at 1, 4.)  After several months of negotiating final terms, the Plaintiffs moved for preliminary approval of their proposed settlement.  (ECF No. 36.)

The Court denied the Plaintiffs' motion for preliminary approval without prejudice, requesting that the Plaintiffs more thoroughly explain and justify certain settlement terms and amend the class notice.  (ECF No. 45.)

Plaintiffs now move the Court to preliminarily approve their amended settlement and notice, stating they have addressed the Court's concerns.  (Mot. at 1.) The Motion is unopposed.  Specifically, Plaintiffs seek: (1) conditional certification of the settlement class and FLSA collective; (2) preliminary approval of the settlement; (3) approval of the class notice; (4) appointment of Plaintiffs as class representatives; (5) appointment of Plaintiffs' counsel as class counsel; (6) appointment of Phoenix Class Action Administration Solutions as the settlement administrator; and (7) scheduling final approval of the settlement.  (*Id.* at 3.)

**SETTLEMENT TERMS**

The proposed settlement class comprises all non-exempt employees of Jesco who worked on projects subcontracted by Tetra between June 3, 2016, and May 1, 2022 (the "Class"). (Settlement § I.B (ECF No. 46-3).) Members of the Class include employees who belong to one or more of the following three subsets:

1. The Rule 23 Class: All persons who were employed by Jesco as non-exempt employees in California and who worked on projects subcontracted by Tetra at any time between June 3, 2016, and May 1, 2022. (Settlement § I.B.1.)

2. The PAGA Class: All persons who were employed by Jesco as non-exempt employees in California and who worked on projects subcontracted by Tetra at any time between May 11, 2019, and May 1, 2022. (*Id.* § I.B.2.)

3. The FLSA Collective: All persons who were employed by Jesco as non-exempt employees in the United States who worked on projects subcontracted by Tetra at any time between June 3, 2017, and May 1, 2022. (*Id.* § I.B.3.)

The Parties have agreed to settle the claims for $600,000 total, with no part of the settlement reverting to Defendants. (*Id.* §§ I.O, III.A.) The Parties anticipate several deductions from the total before distributions to the Class will be made: (1) up to 33 percent, or $200,000, in attorneys' fees; (2) litigation expenses estimated at $18,000; (3) up to $10,000 to each of the six Class representatives; (4) $50,000 to PAGA claims, $37,500 of which will be paid to the California Labor and Workplace Development Agency ("LWDA") with the remaining $12,500 paid to the PAGA Class; and (5) fees not to exceed $7,000 to the settlement administrator. (Settlement § III.B; Declaration of Stan Mallison ("Mallison Decl.") (ECF No. 46-2) ¶ 22.)

Overall, the settlement provides a net settlement amount of approximately $277,500. (Mot. at 6.) The net settlement will be distributed to Class members on a

1 | pro rata basis based on the number of workweeks worked by each member.  (*Id.* at 5–

2 | 6; Settlement § III.D.1.)  After 180 days, any unclaimed funds will be sent to a *cy pres*

3 | beneficiary.  (Settlement § III.E.6; Mallison Decl. ¶ 24.)

4 |       Membership in the Rule 23 Class is automatic, although members will be given

5 | an opportunity to opt-out or object before the final hearing.  (Notice (ECF No. 46-4)

6 | § V.)  Membership in the PAGA Class is also automatic under California law.  *Alcazar v.*

7 | *OEI Holdings, LLC*, No. 2:19-cv-01209-KJM-AC, 2023 WL 2876833, at *2 (E.D. Cal.

8 | Apr. 10, 2023).  Membership in the FLSA Collective is not automatic, but Class

9 | members can opt-in by submitting an "FLSA Opt-In Form."  (Notice § V.)

10 |       Upon final approval of the settlement, Class members, other than those who

11 | elect not to participate in the settlement, will receive their settlement payment in

12 | exchange for the release their state labor law and FLSA claims.  (Settlement § III.H;

13 | Notice §§ IV–V.)

14 | **LEGAL STANDARDS**

15 | **I.     Settlement Agreement**

16 |       In order to grant preliminary approval of a settlement involving class and

17 | collective claims, courts must both conditionally certify the Rule 23 class and FLSA

18 | collective and find that the settlement terms fall within the range of possible approval.

19 |       Under Rule 23, a court must determine if it "will likely be able to" both "certify

20 | the class for purposes of the judgment on proposal" under Rule 23(a) and 23(b), and

21 | "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).

22 |       Under the FLSA, a court must ask if members of the collective action are

23 | "similarly situated" to the original plaintiffs, *see Campbell v. City of Los Angeles*, 903

24 | F.3d 1090, 1109 (9th Cir. 2018), and whether the settlement is "a fair and reasonable

25 | resolution of a bona fide dispute over FLSA provisions," *Kerzich v. County of*

26 | *Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018).

27 |       PAGA claims are distinct from class and FLSA claims.  "[P]laintiffs may bring a

28 | PAGA claim only as the state's designated proxy, suing on behalf of all affected

1  employees." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 86–87 (2020).  Because a PAGA

2  claim is not "a collection of individual claims for relief" like a class action, *Canela v.*

3  *Costco Wholesale Corp.*, 971 F.3d 845, 855 (9th Cir. 2020), PAGA claims "need not

4  satisfy Rule 23 class certification requirements," *Hamilton v. Wal-Mart Stores, Inc.*, 39

5  F.4th 575, 583 (9th Cir. 2022).  However, like class action settlements, PAGA

6  settlements must be approved by the court.  Cal. Lab. Code § 2699(*l*)(2).  Courts in this

7  circuit apply "a Rule 23-like standard," asking whether the settlement of the PAGA

8  claims is "fundamentally fair, reasonable, and adequate."  *Haralson v. U.S. Aviation*

9  *Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

10  **II.   Notice Requirements**

11     If conditional certification of the class and collective is warranted and the

12  settlement terms are adequate, courts must also consider if the proposed class and

13  collective notice meets the requirements of both Rule 23 and the FLSA.

14     For classes likely to be certified under Rule 23(b)(3), "the court must direct to

15  class members the best notice that is practicable under the circumstances," imposing

16  specific requirements on the contents of the notice.  *See* Fed. R. Civ. P. 23(c)(2)(B).

17     The FLSA, although less specific, provides that "the court must provide

18  potential plaintiffs 'accurate and timely notice concerning the pendency of the

19  collective action, so that they can make informed decisions about whether or not to

20  participate.'"  *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007)

21  (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

22     Additionally, in hybrid Rule 23 and FLSA actions, the parties' notice forms must

23  indicate (1) the hybrid nature of the action; (2) the claims involved in the action; (3) the

24  options that are available to class members in connection with the settlement,

25  including how to participate or not participate in the Rule 23 class action and the FLSA

26  collective action aspects of the settlement; and (4) the consequences of opting-in to

27  the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.

28

1    *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778–CAB–WVG, 2017 WL 697895,

2    at *8 (S.D. Cal. Feb. 22, 2017).

3        Finally, where parties seek settlement of PAGA claims and class claims in one

4    action, courts "have required the class notice to clearly articulate that even those who

5    do not opt out of a settlement will release PAGA claims and will receive a portion of

6    the PAGA payment." *Schmidt v. Vision Service Plan*, No. 2:20-cv-2400-KJN, 2023 WL

7    5613103, at *3 (E.D. Cal. Aug. 30, 2023); *see also Sakkab v. Luxottica Retail N. Am.,*

8    *Inc.*, 803 F.3d 425, 436 (9th Cir. 2015) ("Unlike Rule 23(c)(2), PAGA has no notice

9    requirements for unnamed aggrieved employees, nor may such employees opt out of

10    a PAGA action."); *Uribe v. Crown Bldg. Maint. Co.*, 70 Cal. App. 5th 986, 1001 (2021),

11    *as modified on denial of reh'g* (Oct. 26, 2021) ("A defining feature of the class action

12    procedure is that a class member may opt out of the class if he or she does not wish to

13    be bound by the result of the suit . . . PAGA actions do not afford the same opt out

14    feature.") (cleaned up).

15                     **ANALYSIS**

16    **I.**    **Conditional Certification Of The Rule 23 Class And FLSA**

17        **Collective**

18        For the reasons set forth below, the Court will conditionally certify both the Rule

19    23 Class and FLSA Collective.

20        **A.**    **Rule 23 Class**

21        Class certification under Rule 23 requires plaintiffs to satisfy each of the four

22    prerequisites of Rule 23(a), i.e., numerosity, commonality, typicality, and adequacy of

23    representation. Fed. R. Civ. P. 23(a). Plaintiffs must also establish an appropriate

24    ground for maintaining the class action under Rule 23(b). *See Walker v. Life Ins. Co. of*

25    *the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020). The Court finds that both requirements are

26    met here.

27    ////

28    ////

**1.   Rule 23(a)**

First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   Although "no fixed number . . . satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).   Here, there are approximately 230 Class members.   (Mallison Decl. ¶ 19; Settlement § I.C.)   Joinder of each putative member would be impracticable.   The numerosity requirement is satisfied. *See Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *4 (E.D. Cal. Jan. 22, 2019).

Second, a proposed class can be certified only if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).   That is true here.   Plaintiffs allege all Class members were subject to "Defendants' alleged failure to provide timely, compliant meal periods of the proper duration," and that "such violations plainly appear on the face of Defendants' records." (Mot. at 19.)   Since this case presents common questions suitable to resolution "in one stroke," the commonality requirement is met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Third, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).   Here, Plaintiffs allege they were not

7

properly compensated under meal period policies applicable to the entire Class. (Mallison Decl. ¶ 30.)  Further, analysis of the time and pay records showed regular meal period violations on a class-wide basis.  (*Id.*)   These claims, and the defenses to them, are identical to those of the other proposed Class members.  (*Id.* ¶ 39.) Therefore, the typicality requirement is satisfied.

Fourth, the named plaintiffs and their counsel must "fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   Courts consider both whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [] the named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  Here, there is no evidence of any conflict between Plaintiffs and the Class members. (Mallison Decl. ¶ 39.)  In addition, Plaintiffs have actively participated in the investigation of the issues in this case and the negotiations leading to settlement of this matter, providing counsel with information, documents, and necessary decisions permitting them to actively pursue this case, thereby expending "considerable time in their efforts on behalf of the class." (*Id*. ¶ 13.)  Accordingly, Plaintiffs have adequately represented the Class.

For their part, Plaintiffs' counsel, Mallison & Martinez, have also adequately represented the interests of the Class.  Plaintiff's counsel are highly experienced in litigations of this type, having been "involved with over 200 wage and hour class and representative action cases" since the firm's formation, and both Mr. Mallison and Mr. Martinez are well-seasoned labor and employment litigation attorneys.  (Mallison Decl. ¶¶ 4–10.)  Counsel represent that they engaged in thorough due diligence before initiating this action and conducted "significant" amounts of discovery after the action commenced, engaging an expert to review and analyze records received in the course of discovery in order to assess the strengths and weaknesses of the case before engaging in mediation.  (*Id.* ¶¶ 15–16.)  Thus, Plaintiffs' counsel have adequately represented the Class.

1    In sum, Plaintiffs have satisfied the requirements of Rule 23(a).

2    **2.    Rule 23(b)**

3    Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "the

4    questions of law or fact common to class members predominate over any questions

5    affecting only individual members" and (2) "a class action is superior to other available

6    methods for fairly and efficiently adjudicating the controversy."    Fed. R. Civ. P.

7    23(b)(3).

8    "The predominance inquiry asks whether the common, aggregation-enabling,

9    issues in the case are more prevalent or important than the non-common,

10    aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S.

11    442, 453 (2016) (citation and internal quotation marks omitted).  Wage and hour class

12    actions are likely to be certified under this standard when "the major questions in [the]

13    case arise from [the defendant's] alleged failure to properly calculate wages and

14    overtime, account for meal periods and rest periods, and provide reimbursements."

15    *Smothers*, 2019 WL 280294, at *7.  As noted above, common questions of law and fact

16    predominate because all Class members were subject to "Defendants' alleged failure

17    to provide timely, compliant meal periods of the proper duration." (Mot. at 19.)  While

18    the Court may not "rely on uniform policies 'to the near exclusion of other relevant

19    factors touching on predominance,'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952,

20    965 (9th Cir. 2013) (citations omitted), the current record establishes these policies

21    were applied to all putative Class members who performed  similar job functions (i.e.,

22    post-disaster assessment and cleanup for Defendants) and were paid similar salaries,

23    with no evidence that variance from these policies or other "fact-intensive"

24    determinations would prevent the identified major questions from predominating.

25    (*See* Mot. at 1, 4 n.1.)  Thus, the Court finds that common questions predominate.

26    "The superiority inquiry under Rule 23(b)(3) requires determination of whether

27    the objectives of the particular class action procedure will be achieved in the

28    particular case," which "necessarily involves a comparative evaluation of alternative

1  mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023

2  (9th Cir. 1998) (citation omitted).  The Parties agree this action is the superior method

3  of resolving the controversy as it will guarantee recovery for the Class while

4  minimizing the risks and expense of litigation.  (Mot. at 2, 20.)  The Court agrees.

5           Plaintiffs have satisfied the requirements of Rule 23(b).

6       **B.     Condititonal Certification Of The FLSA Collective**

7           The Court finds that Plaintiffs have also satisfied the requirements for

8  conditional certification of the FLSA Collective.

9           Plaintiffs seeking conditional certification of a collective action under the FLSA

10  have the burden to show that they are "similarly situated" to other class members.

11  *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1340 (N.D. Cal. 2014).  Plaintiffs can show they

12  are similarly situated by making "substantial allegations, supported by declarations or

13  discovery, that 'the putative class members were together the victims of a single

14  decision, policy, or plan.'"  *Id.* (quoting *Brewer v. Gen. Nutrition Corp.*, No. 11-cv-

15  03587-YGR, 2013 WL 100195, at *3 (N.D. Cal. Jan. 7, 2013)).  "This determination is

16  made based on a fairly lenient standard, and typically results in a conditional

17  certification."  *Id.*

18          Here, Plaintiffs allege that they and similarly situated employees regularly

19  worked over 12 hours per day, exceeding the threshold for double time under

20  California law, and typically worked approximately 10 hours per week, per employee,

21  of off-the-clock hours.  (SAC ¶¶ 29-30.)  As such, Plaintiffs assert that Defendants failed

22  to compensate them and similarly situated employees for all overtime hours regularly

23  worked as required under the FLSA.  (*Id.* ¶ 28.)  Plaintiffs acknowledge that they lack

24  concrete records of such time worked off-the-clock.  (Mot. at 16.)  However, Plaintiffs

25  submit that all Class members worked the same job, made similar salaries, and

26  worked under similar conditions, stating they will submit declarations describing these

27  working conditions in more detail before the final approval hearing.  (Mot. at 4 n.1.)

28

1       Accordingly, given the lenient standard for preliminary approval of a collective,

2  the Court finds Plaintiffs have sufficiently demonstrated that they are similarly situated

3  to other employees for the purposes of preliminary certification.  *See, e.g., Zaborowski*

4  *v. MHN Gov't Servs., Inc.*, No. C 12-05109-SI, 2013 WL 1787154 at *4 (N.D. Cal. Apr.

5  25, 2013) (granting conditional certification where collective members "[had] the

6  same job title; perform[ed] substantially similar activities; [were] governed by the

7  same Provider Services Task Order Agreement, Provider Manual, and Program

8  Summary; and, most importantly, [were] all considered exempt employees that [the

9  defendant did] not pay for overtime").

10  **II.    Preliminary Approval Of The Class Settlement**

11       Preliminary approval of a class settlement is governed by Rule 23(e) and has

12  both procedural and substantive components.  Settlement approval is appropriate

13  only if the Court finds that the settlement is "fair, reasonable, and adequate"

14  considering whether: (1) the proposed settlement appears to be the product of

15  serious, informed, non-collusive negotiations, (2) the settlement falls within the range

16  of possible approval, (3) has no obvious deficiencies, and (4) does not improperly

17  grant preferential treatment to class representatives or segments of the class.  *In re*

18  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007).

19  Additionally, because the settlement involves FLSA and PAGA claims, the Court must

20  evaluate whether the settlement meets the requirements under those acts.

21       For the reasons discussed below, the Court finds that preliminary approval of

22  the settlement is appropriate with respect to the class and FLSA claims.  However, the

23  Court has noted deficiencies with the settlement's treatment of the PAGA claims that

24  must be addressed before the Court can approve the settlement in its entirety.

25  Accordingly, the Court will reserve preliminary approval of the settlement at this time.

26  ////

27  ////

28  ////

**A.**     **Preliminary Approval Under Rule 23(e)**

       **1.**     **The Proposed Settlement Is The Product of Serious, Informed,**
       **Non-Collusive Negotiations**

A settlement is presumed fair if it follows sufficient discovery and genuine arm's-length negotiation.  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (2012).  Participation in mediation also "tends to support the conclusion that the settlement process was not collusive."  *Villegas v. J.P. Morgan Chase & Co.*, No. 09–00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation omitted).

Here, after a year and a half of litigation, the Parties engaged in mediation with a neutral in February 2022.  (Mot. at 4.)  Leading up to the mediation, Defendants produced payroll and timekeeping records, following which Plaintiffs engaged a database expert to review and analyze these records.  (*Id.*; Mallison Decl. ¶ 16.)  The expert used this data to produce a damages model to present to Defendants at mediation.  (Mallison Decl. ¶ 16.)  The discovery conducted and the presumptive damages calculated allowed the Parties to "assess the strengths and weaknesses of the case, as well as its value."  (*Id.*)  In sum, Plaintiffs assert that the settlement was reached after extensive, informed, arm's-length negotiations.  (*Id.* ¶ 40.)

Based on these representations, the Court concludes that the settlement is the product of serious, informed, non-collusive negotiations.

       **2.**     **The Settlement Falls Within The Range Of Possible Approval**

Under Rule 23(e), a class action may be settled only if the court finds "the relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2).  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

The proposed settlement appears reasonable and adequate given the strengths and weaknesses of the Class claims.  As explained by Plaintiffs' counsel, before reaching settlement, they obtained Defendants' payroll and timekeeping

1  information and performed detailed expert analysis thereon to calculate total

2  damages, penalties, and interest at $1,354,302.  (Mallison Decl. ¶¶ 29, 32.)  The

3  Parties' gross settlement figure, $600,000, represents approximately 44 percent of the

4  theoretical maximum recovery, while the net settlement amount, $277,500, represents

5  approximately 20 percent of the theoretical maximum.  This recovery is above the

6  range that has been approved by other courts in this circuit.  *See, e.g., Singh v.*

7  *Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325,

8  at *7 (E.D. Cal. May 29, 2018), *modified*, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018)

9  (approving a settlement of about 12 percent of the estimated maximum damages); *In*

10  *re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a

11  settlement of about 9 percent of the estimated maximum).

12          Several factors led Plaintiffs to accept a discounted settlement of $600,000.

13  First, at the time of settlement, the *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.

14  5th 93 (2022) matter had not yet been decided by the California Supreme Court,

15  leaving open the question of whether Plaintiffs' meal break claim would support

16  awards of wage statement and waiting time violations under *Maldonado v. Epsilon*

17  *Plastics, Inc.*, 22 Cal. App. 5th  1308 (2018) and *Kirby v. Immoos Fire Protection, Inc.*,

18  53 Cal. 4th 1244 (2012).  (Mallison Decl. ¶ 30.)

19          This Court previously requested a more detailed analysis of *Naranjo*'s impact on

20  the reasonableness of the settlement amount, given that the decision was favorable

21  for Plaintiffs' claims.  (ECF No. 45 at 6–7.)  In response, Plaintiffs' counsel explains that

22  by the time that decision issued, the Parties were well into the process of finalizing the

23  settlement agreement and were doubtful that the decision would have supported a

24  belated request by Plaintiffs for an increase in the settlement amount.  (Mallison Decl.

25  ¶ 30.)  Additionally, counsel was wary of the further delays which would have resulted

26  from an attempt to re-negotiate the agreement.  (*Id.*)  Thus, Plaintiffs opted to move

27  forward with the approval process rather than attempt to adjust the settlement

28  amount.  (*Id.*)

1    Additionally, Plaintiffs explain that, even if they prevailed on their wage and

2  break violation claims, they faced legal obstacles in obtaining other derivative

3  damages and penalties.  (*Id.* ¶¶ 33–34.)  For example, this Court could decline to

4  enter a finding of "willfulness" regarding Defendants' untimely payment of wages to

5  severed employees, foreclosing any recovery under Labor Code section 203.  (*Id.*)

6    Finally, Plaintiffs' counsel concluded that the settlement amount of $600,000

7  was reasonable and adequate given "the risk of significant delay, the defenses

8  asserted by Defendants, the amount of potential damages in this case, and success on

9  the merits at trial."  (*Id.* ¶ 36.)

10    In light of the foregoing risks and uncertainties, the Court finds it is reasonable

11  to apply a discount to the claims, bringing the total amount down to $600,000.

12          **3.      The Settlement Has No Obvious Deficiencies**

13    When, as here, a settlement agreement has been negotiated before a class has

14  been certified, a court must also "undertake an additional search for more 'subtle signs

15  that class counsel have allowed pursuit of their own self-interests and that of certain

16  class members to infect the negotiations.'"  *Kang v. Credit Bureau Conn., Inc.,* No.

17  1:18-cv-01359-SKO, 2023 WL 3751117, at *5 (E.D. Cal. June 1, 2023) (quoting *Briseño*

18  *v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)).  Three oft-cited "red flags" of

19  unfair settlements are (1) fees that make up a disproportionately large part of the

20  distribution to the class, (2) "clear sailing" agreements providing for the payment of

21  attorneys' fees separate and apart from class funds without defense objection, and

22  (3) agreements that permit unpaid fees to revert to defendants.   *In re Bluetooth*

23  *Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

24    The Court finds that no such deficiencies are present here.  While the settlement

25  initially contained a clear sailing provision, the Parties removed this provision from

26  their agreement in response to the Court's previous order.  (Mot. at 9; Settlement

27  § III.B.1–2.)  In addition, the settlement provides that none of the settlement will revert

28

14

1    to Defendants.  (Settlement § III.A.)  These factors weigh in favor of preliminary

2    approval.

3          In addition, while the settlement permits an award of substantial attorneys' fees,

4    as well as a large incentive payment to the named Plaintiffs, these fees are not cause

5    for concern at this stage.  First, the proposed attorneys' fees are not necessarily

6    unreasonable.  Typically, a disproportionate award to counsel is a "subtle sign that

7    class counsel have allowed pursuit of their own self-interests and that of certain class

8    members to infect the negotiations."  *Bluetooth*, 654 F.3d at 947 (citations omitted).

9    This is particularly true where, as here, fees are to be paid from a common fund, as the

10   relationship between the class members and class counsel "turns adversarial."  *In re*

11   *Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

12         In evaluating an award of attorneys' fees, "courts have discretion to employ

13   either the lodestar method or the percentage-of-recovery method."[1]  *Bluetooth*, 654

14   F.3d at 942 (citations omitted).  The proposed settlement includes an award of

15   attorneys' fees up to 33 percent of the gross settlement, or $200,000.  (Mot. at 6;

16   Settlement § III.B.2.)  This is higher than the 25 percent benchmark for the Ninth

17   Circuit, though courts in this district have previously approved fees at 33 percent of

18   the settlement fund for wage-and-hour class actions.  *See Barbosa v. Cargill Meat Sols.*

19   *Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved

20   attorneys' fees of about one-third of the total settlement).  Plaintiffs' counsel contends

21   that the proposed request for attorneys' fees is "reasonable in light of the time and

---

23   [1] Under the percentage of the fund method, the court may award class counsel a percentage of the
     common fund recovered for the class; in the Ninth Circuit, the benchmark is 25 percent.  *Bluetooth*, 654

24   F.3d at 942.  "Selection of the benchmark or any other rate must be supported by findings that take into
     account all of the circumstances of the case."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir.

25   2002).  With the lodestar method, the court multiplies the number of hours the prevailing party
     reasonably spent litigating the case by a reasonable hourly rate for counsel.  *Bluetooth*, 654 F.3d at 941.

26   The product of this computation, the lodestar amount, yields a "presumptively reasonable" fee.  *Id.*  The
     Ninth Circuit has recommended that district courts apply either the percentage of the fund method or

27   the lodestar method but cross-check the appropriateness of the determined amount by employing the
     other.  *Id.* at 944.

28

15

1   expense expended achieving [] substantial benefits," and that "Class Counsel was

2   aware that the only way they would be compensated was to achieve a successful

3   result" because they worked on a contingency fees basis, yet they "did not waiver in

4   pursuing the interests of the Class . . . ."  (Mallison Decl. ¶ 44.)

5        The Court appreciates that counsel expended time and expense in achieving

6   the proposed settlement, and this explanation is sufficient to grant preliminary

7   approval.  The Court will consider counsel's justifications for the amount requested, as

8   well as any objections, at the final approval hearing.  However, counsel is reminded

9   that a substantial justification will be necessary in order for the Court to depart from

10  the 25 percent benchmark, *see Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir.

11  2000), and that counsel will need to provide the Court with adequate information to

12  cross-check the proposed award against the "lodestar" fee, *see Vizcaino*, 290 F.3d at

13  1050.

14       Second, while the proposed incentive award to the named Plaintiffs is

15  substantial, it will not prevent settlement approval at this stage.  Ordinarily, large

16  incentive awards are discouraged in class action settlements as plaintiffs who stand to

17  receive several thousand dollars extra have an incentive to support agreements that

18  are unfair to absent class members.  *See Radcliffe v. Experian Info. Sols.*, 715 F.3d

19  1157, 1165 (9th Cir. 2013).  For that reason, although the Ninth Circuit has agreed that

20  incentive awards "may be proper," it has also "cautioned that awarding them should

21  not become routine practice." *Id.* at 1163.

22       Here, the named Plaintiffs stand to recover up to $10,000 dollars each if the

23  settlement is approved, or about 1.67 percent of the gross amount, whereas the

24  average net recovery for each Class member is $1,206.  (Mot. at 6.)  Plaintiffs justify

25  this incentive award by arguing that they "have represented their colleagues and

26  invested significant time and energy into this case, risking their reputation and the

27  threat of retaliation from future employer, as well as the payment of a substantial cost

28  award had they not prevailed in the action."  (Mot. at 14.)

1        Other courts in this district have approved incentive awards of up to $10,000 at

2   the preliminary approval stage.  *See, e.g., Gonzalez v. CoreCivic of Tenn., LLC*, No.

3   1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *12–13 (E.D. Cal. Mar. 26, 2020)

4   (preliminarily approving $15,000 and $10,000 incentive payments while cautioning

5   counsel to provide clear and specific evidence at the final approve stage

6   demonstrating significant contributions by the named plaintiffs in light of the limited

7   evidence and conclusory assertions presented in seeking preliminary approval);

8   *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2020 WL

9   1532058, at *13 (E.D. Cal. Mar. 31, 2020) (finding $10,000 service award to each class

10  representative reasonable "in light of plaintiffs' extensive time commitment, as laid out

11  in their sworn declarations").  Thus, the Court will approve the proposed incentive

12  award at this preliminary stage, but cautions Plaintiffs that substantial evidence

13  demonstrating their contributions to the litigation will be required to approve this

14  amount at the final approval hearing.

15        In conclusion, the settlement has no obvious deficiencies.

16             **4.     The Settlement Does Not Grant Preferential Treatment**

17        The fourth factor addresses whether the proposed Settlement Agreement

18  "treats class members equitably relative to each other."  *See* Fed. R. Civ. P. 23(e)(2)(D).

19  This inquiry considers both equity across sub-categories, or segments, of the class,

20  and equity between class representatives and unnamed class members.

21        Here, the settlement does separate the payment for Class members into three

22  funds: the Rule 23 Class, the PAGA Class, and the FLSA Collective.  However, the

23  reason for the distinction between these three groups is logically permissible based

24  on the applicable statutes of limitations and is not an indication of preferential

25  treatment.  In addition, while the named Plaintiffs will be granted an incentive award,

26  for the reasons discussed in Section II.A.3 *supra*, the Court finds that the incentive

27  award does not weigh against settlement approval.

28        Thus, the settlement does not grant preferential treatment.

17

### B. FLSA Component

FLSA settlements must comprise "a fair and reasonable resolution of a bona fide dispute." *See, e.g., Kerzich*, 335 F. Supp. 3d at 1184.  A dispute is "bona fide" if there are "legitimate questions" about the existence and extent of a defendant's FLSA liability.  *Id.*; *see also Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  "A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute." *Kerzich*, 335 F. Supp. 3d at 1184.  However, if a bona fide dispute between the parties exists, courts will often consider many of the same factors that guide preliminary certification of Rule 23 class actions in evaluating the fairness of the FLSA settlement. *See Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902-DAD-SKO, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018).

The Court finds that this settlement represents a reasonable resolution of a bona fide dispute.  Plaintiffs complained of incurring unpaid time worked off-the-clock, which would have given rise to unpaid wage claims under the Labor Code and FLSA. (Mot. at 16.)  However, Plaintiffs explain that they lacked concrete records of such time worked (and, for this same reason, lacked any corresponding expert analysis), which impacted their ability to prove these claims on a class-wide basis.  (*Id.*) This lack of common proof substantially diminished the strength of the claim, as the potential inability to certify the claims reduced their value.  (*Id.*)  Given the uncertainties surrounding Plaintiffs' ability to prove their FLSA claims, the Court finds there is a bona fide dispute as to the extent and value of the FLSA claims.

Moreover, the settlement is fair and reasonable given the estimated value of Plaintiffs' FLSA claims.  A release of FLSA claims in exchange for no consideration is not a "fair and reasonable" resolution of a dispute.  *Thompson*, 2017 WL 697895, at *8.  Plaintiffs previously failed to provide an estimated value of their FLSA claims.  (*See* ECF No. 45 at 9–11.)  However, Plaintiffs have now clarified the value.  Plaintiffs

"estimate an average of 30 minutes of off-the-clock work per shift" and place damages at approximately $148,460 for unpaid wage claims under the Labor Code and FLSA. (Mallison Decl. ¶ 32.)  Plaintiffs explain that is difficult to parse out how much of these potential damages for unpaid wage claims are attributable to the FLSA and the Labor Code.  (Mot. at 16 n.4.)  On the one hand, California's Unfair Competition Law provides a four-year statute of limitations, as opposed to the FLSA's three.  (*Id.*)  On the other hand, the FLSA allows for recovery of liquidated damages in addition to the unpaid wages, whereas the Labor Code does not.  (*Id.*)  Thus, Plaintiffs assert the best estimate in terms of allocating the available unpaid wage claims between California and federal law is to split the value down the middle and assign a value of $74,230 to the FLSA claims.  (*Id.*)

Given that there is a bona fide dispute as to Plaintiffs' FLSA claims, Plaintiffs have clarified the claims' value, and for the reasons discussed in Section II.A *supra*, the Court finds that the settlement is a fair and reasonable resolution of the FLSA claims. *See, e.g., Alcazar*, 2023 WL 2876833, at *3 (granting renewed motion for preliminary approval of class settlement in part because the parties clarified the approximate value of the FLSA claims to be released).

**C.      PAGA Component**

The Court finds that the PAGA settlement amount is fair and reasonable. However, as explained below, the settlement does not properly explain that there is no mechanism for opting out of a judgment entered on a PAGA claim.  Thus, the PAGA Class members will be bound by settlement of the PAGA claim and will receive a share of the PAGA settlement regardless of whether they opt out of the settlement or not.

Accordingly, the Court will require the Parties to fix this deficiency in the settlement, as well as in the notice, before preliminary approval is granted.

////

////

**1.    Fundamental Fairness Of Settlement Of PAGA Claims**

Courts will approve a settlement of PAGA claims upon a showing that the settlement terms meet the statutory requirements set forth by PAGA, and are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals. *See Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902–DAD–SKO, 2020 WL 5095885, at *6 (E.D. Cal. Aug. 28, 2020).  The Court finds that the settlement meets these requirements.

First, the Parties have submitted the proposed settlement to the LWDA for comment as required under the Labor Code.  (LWDA Submission (ECF No. 46-5);) Cal. Lab. Code § 2699(l)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court.").  Second, concerning the fairness of the settlement, "'neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. 5:16-cv-01701-JVS-SP, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)).  However, the LWDA has offered the following guidance:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).  In line with these general principles, many district courts have applied a Rule 23-like standard, asking whether the settlement of PAGA claims is "fundamentally fair,

1   adequate, and reasonable in light of PAGA's policies and purposes." *Jordan*, 2018
2   WL 1409590, at *2 (collecting cases).

3       Here, the proposed PAGA settlement is $50,000, or 12 percent of the gross
4   settlement amount.  (Settlement § III.B.3.)  Plaintiffs argue that the allocation of
5   $50,000 to PAGA claims is reasonable "as the class claims for unpaid wages and
6   meal/rest break violations formed the primary basis for liability, as opposed to the
7   PAGA claim . . . ."  (Mot. at 7.)  Plaintiffs explain that in "circumstances where PAGA
8   presents the only method of recovery for representative claims (e.g., where there is an
9   arbitration agreement, where class certification is denied, etc.), PAGA penalties for
10  unpaid wage claims are unlikely to be reduced, as that would provide the employer
11  with an unfair windfall." (*Id.* at 8.)  Here, however, "[t]o the extent Plaintiffs would have
12  prevailed in obtaining a sizeable award of PAGA penalties, they would have likely
13  faced the risk of a significant reduction by the Court" because "where the class claims
14  form[] the primary basis for recovery, a massive award of PAGA penalties would likely
15  have been seen as excessive." (*Id.*)

16       The Court finds this is a reasonable justification for reducing the PAGA award,
17  and adequately complies with the Court's prior request for a more thorough
18  explanation of the PAGA allocation. (*See* ECF No. 45 at 8–9.)  In addition, the Court
19  notes that settlements with PAGA penalties accounting for 12 percent of the gross
20  settlement amount fall within the range previously approved in this district. *See, e.g.,*
21  *Martinez v. Semi-Tropic Coop. Gin*, No. 1:19-cv-1581-JLT-CDB, 2023 WL 3569906
22  (E.D. Cal. May 19, 2023) (approving 12 percent of total settlement as PAGA penalties).

23       Accordingly, the Court finds that the PAGA settlement is fair and reasonable.

24       **2.      Distribution Of PAGA Payment And Inability To Opt Out Of**
25               **PAGA Settlement**

26       Under PAGA, an "aggrieved employee" may bring an action for civil penalties
27  for labor code violations on behalf of himself and other current or former employees.
28  Cal. Lab. Code § 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's

1  designated proxy, suing on behalf of all affected employees." *Kim*, 9 Cal. 5th at 87.

2  Because a PAGA plaintiff serves "as the proxy or agent of the state's labor law

3  enforcement agencies," "a judgment in th[e] action binds all those, including nonparty

4  aggrieved employees, who would be bound by a judgment in an action brought by

5  the government." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009); Rutter, Cal. Prac.

6  Guide Civ. Pro. Before Trial Ch. 14-C [14:134.1] ("Because a PAGA plaintiff acts as a

7  proxy for the state and brings an enforcement action on behalf of all aggrieved

8  employees, claim preclusion will bar relitigation of PAGA claims by any person, even

9  one who has purported to 'opt out.'").

10       "Unlike a class action, there is no mechanism for opting out of a judgment

11  entered on a PAGA claim." *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th

12  521, 541 n.5 (2021) (cleaned up); *Sakkab*, 803 F.3d at 436 ("Unlike Rule 23(c)(2), PAGA

13  has no notice requirements for unnamed aggrieved employees, nor may such

14  employees opt out of a PAGA action.").  Thus, a PAGA plaintiff owes a duty both to

15  their "fellow aggrieved workers," who will be inalterably bound by the judgment on

16  the PAGA claim, and to the public at large because "they act, as the statute's name

17  suggests, as a private attorney general." *O'Connor*, 201 F. Supp. 3d at 1133–34.

18       Further, the California Supreme Court has advised that "a portion of the [PAGA]

19  penalty goes not only to the citizen bringing the suit but to all employees affected by

20  the Labor Code violation." *Iskanian v. CLS Transportation L.A., LLC*, 59 Cal. 4th 348,

21  382 (2014), *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 142 S.

22  Ct. 1906 (2022).  The Ninth Circuit agrees, stating the 25 percent PAGA allocation for

23  employees "is not awarded exclusively to the employee who files the suit.  Instead, it is

24  allocated among the aggrieved employees." *Canela*, 971 F.3d at 852 n.3; *see also*

25  *Martinez Lopez v. Randstad US, L.P.,* 822 F. App'x 518, 519 (9th Cir. 2020) ("That 25

26  percent is distributed among all aggrieved employees, not just the named PAGA

27  representatives.").

28

1    The present settlement fails to account for the fundamental difference between

2    the class and PAGA claims it covers.

3    The settlement lumps all PAGA Class members into the "Participating Class

4    Members" category along with Rule 23 Class members who do not request exclusion

5    from the settlement and FLSA Collective members who opt into the FLSA Collective.

6    (*See* Settlement § I.X.)  The settlement provides that all Participating Class Members

7    will recover a settlement share.  (*Id*. § III.D.)  In exchange, the settlement states that all

8    Participating Class Members will release state labor law and FLSA claims, including

9    PAGA claims.  (*Id*. § III.H.2.)

10   However, the settlement fails to explain the consequences for PAGA Class

11   members who elect not to participate in the Rule 23 Class and FLSA Collective.  The

12   settlement does not advise PAGA Class members that they will be barred from

13   bringing a PAGA claim (or obtaining relief through another PAGA representative suit)

14   for any PAGA claims arising during the PAGA Class period even if they opt out of the

15   settlement.  *See O'Connor*, 201 F. Supp. 3d at 1120.  The settlement also fails to clarify

16   that PAGA Class members will receive a portion of the PAGA settlement regardless of

17   whether they opt out.

18   The proposed notice compounds the errors in the settlement, stating:

19   If you exclude yourself from the Settlement, you will not get
     any money from this Settlement.  Any money that would have
20   gone to you will go to other Settlement Class Members.  If
     you exclude yourself, you keep your right to sue Defendants
21   (and other Released Parties) for any wage-related claims you
     may have, but you will have to do this on your own.
22

23   (Notice § V.B.)  These statements are incorrect with respect to the PAGA claim.

24   Submitting a request for exclusion will not preserve any PAGA Class member's right to

25   bring their own PAGA claim for the alleged violations in a future suit, and even those

26   who opt out will still receive a share of the PAGA payment.

27   The Court leaves it to the Parties to determine how best to revise the settlement

28   to ensure that both the agreement and the notice accurately convey how opting out

23

will affect Class members' rights under the law, and all aggrieved employees for purposes of the PAGA claim receive their pro rata portion of the PAGA payment designated for them, regardless of whether they opt out of the settlement.  For examples, the Parties may wish to examine the settlement agreements approved in *Botonis v. Bimbo Bakeries USA, Inc.*, No. 2:22-cv-01453-DJC-DB, 2024 WL 100545, at *2 (E.D. Cal. Jan. 9, 2024) ("Regardless of whether a class member opts out, they will release the PAGA claims" and receive a portion of the PAGA settlement); *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *2 (S.D. Cal. May 7, 2021) ("PAGA members would be mailed the PAGA payment even if they opt-out of the class settlement."); or *Stonehocker v. Kindred Healthcare Operating LLC*, No. 19-CV-2494-YGR, 2021 WL 1643226, at *24 (N.D. Cal. Apr. 27, 2021) (distinguishing between Class Members and PAGA Releasees, and making explicit that PAGA Releasees "will not have the opportunity to opt out or object to the PAGA Payment and/or release of PAGA Claims although the PAGA Settlement will be subject to Court approval").

The Court will reserve preliminary approval of both the settlement and notice until these deficiencies are cured.

## III.   Approval Of The Class And Collective Notice

Apart from the PAGA concerns noted above, the Court finds that the class and collective notice are largely adequate, subject to one clarification the Parties are ordered to make to the class notice below.

Accordingly, once the Court's PAGA concerns are addressed, the Court will approve the class and collective notice.

### A.   Rule 23 Class Notice

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The notice must contain, in plain and clear language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses;

1   (4) the right of a class member to appear through an attorney, if desired; (5) the right

2   to be excluded from the settlement; (6) the time and manner for requesting an

3   exclusion; and (7) the binding effect of a class judgment on members of the class.  *Id.*

4   A settlement notice is satisfactory if it "generally describes the terms of the settlement

5   in sufficient detail to alert those with adverse viewpoints to investigate and to come

6   forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

7   2004).

8         The amended notice meets the requirements of Rule 23.  First, the notice will

9   be mailed to the last known address of each putative Class member with use of a

10   diligent search for each notice returned as undeliverable, which satisfies the

11   procedural aspect of Rule 23.  (Settlement § III.E.2.f;) *Millan v. Cascade Water Servs.*,

12   310 F.R.D. 593, 608 (E.D. Cal. 2015).

13         Second, the notice explains in plain language the Parties to the lawsuit, the

14   definition of the Class certified, the claims at issue, and the terms of the settlement.

15   (*See* Notice §§ I-III.)  It also explains each Class member's projected share of the

16   settlement, as well as what claims will be released.  (*Id.* §§ III-IV.)  Further, it informs

17   Class members that they will be bound by the release if they do not opt out.  (*Id.* § IV.)

18   Finally, it provides instructions on how to object or opt out with deadlines.  (*Id.* § V.)

19         Concerning the objection instructions, the Court will require one point of

20   clarification.  In the settlement, the Parties provide that Class members may dispute

21   the number of workweeks used to calculate their estimated settlement share, and

22   specify that, in order to lodge a dispute, members should submit a written notice of

23   dispute setting forth (1) the name of the case, (2) their personal information (name,

24   address, etc.), (3) a clear statement that they dispute the computation of workweeks

25   along with the number of workweeks they contend is correct, and (4) supporting

26   documentation (pay stubs, etc.).  (Settlement § III.E.2.h.)  The notice provides that

27   members may challenge their anticipated share settlement but does not specify the

28   required contents of the dispute as set forth in the settlement.  (Notice § III.)  The

1   Parties should more clearly specify the required contents of any workweek dispute in
2   the notice.

3      Third, the amended notice cures the deficiencies previously identified by the
4   Court.  (ECF No. 45 at 13.)  That is, it informs potential Class members of their right to
5   appear through an attorney, if desired, and indicates the final approval hearing will be
6   held before this Court.  (Notice §§ V–VI.)

7      Accordingly, the proposed class notice will be approved, subject to the minor
8   clarification identified above.

9      **B.**  **FLSA Collective Notice**

10      Courts require a separate opt-in procedure for FLSA claims when the
11   settlement includes both Rule 23 and FLSA claims.  *See Hudson v. Libre Tech., Inc.*,
12   No. 3:18-cv-1371-GPC-KSC, 2019 WL 5963648, at *9 (S.D. Cal. Nov. 13, 2019)
13   (collecting authorities).  In addition, as this is a hybrid action, the notice forms must
14   indicate (1) that the action is hybrid in nature, (2) the claims involved, (3) the options
15   that are available to Class members, including how to participate or not participate in
16   the Rule 23 Class and FLSA Collective, and (4) the consequences of opting-in to the
17   FLSA Collective, opting-out of the Rule 23 Class, or doing neither.  *Thompson*, 2017
18   WL 697895, at *8.

19      The Court noted several deficiencies with the proposed FLSA notice in the
20   Court's prior order.  (ECF No. 45 at 13–14.)  Plaintiffs have now remedied these faults,
21   and the Court finds the amended FLSA notice to be sufficient.

22      Procedurally, Class members opt into the FLSA Collective and release their
23   FLSA claims by submitting an "FLSA Opt-In Form" to the settlement administrator.
24   (Settlement § III.E.2.d; Notice §§ IV–V.)  This procedure satisfies the FLSA, which
25   requires written consent from members who wish to opt in to an FLSA collective.  *See*
26   29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action
27   unless he gives his consent in writing to become such a party and such consent is filed

28

1  in the court in which such action is brought."); *Genesis HealthCare Corp. v. Symczyk*,

2  569 U.S. 66, 75 (2013).

3       Substantively, the notice explains that the action is hybrid in nature, identifies

4  the claims involved, explains the options that are available to Class members,

5  including how to participate in the FLSA Collective, and the consequences of opting-

6  in to the FLSA Collective, including which claims will be released.  (Notice §§ I–V.)

7       Accordingly, the Court finds the proposed FLSA opt-in procedure and notice

8  are sufficient; the collective notice is approved.

9  **IV.   Appointment Of The Class Representatives, Class Counsel, And**

10         **Settlement Administrator**

11       For the reasons discussed above in Sections I.A.1 and II.A.3 *supra*, the Court

12  finds that Plaintiffs have adequately represented the interests of the Class by

13  providing information and documents to their counsel and devoting their personal

14  time to pursuit of this litigation.  Accordingly, Plaintiffs shall be appointed as class

15  representatives ("Class Representatives").

16       Similarly, Plaintiffs' counsel Mallison & Martinez are experienced labor and

17  employment litigators who have devoted substantial time and resources to

18  investigating and negotiating the settlement in this matter.  *See* Section I.A.1 *supra*.

19  They shall be appointed as class counsel ("Class Counsel").

20       Finally, the Parties have agreed upon and propose that the Court appoint

21  Phoenix Class Action Administration Solutions to serve as the settlement administrator

22  for a capped fee of $7,000.  (Mallison Decl. ¶ 22.)  Class counsel represents that their

23  "office regularly works with Phoenix and knows the company to be a responsible

24  settlement administrator."  (*Id.*)  Based upon the recommendation of Parties, the Court

25  shall appoint Phoenix settlement administrator ("Settlement Administrator").

26  ////

27  ////

28  ////

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED:

1.  Plaintiffs' Motion for Preliminary Approval of Amended Class Settlement (ECF No. 46) is GRANTED in part.  Specifically:

    a.  The proposed Rule 23 Class and FLSA Collective are certified for settlement purposes.

    b.  The named Plaintiffs, Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac Saunders, Hakeem Allambie, and Nichlon Garrett, are appointed as Class Representatives for settlement purposes.

    c.  Plaintiffs' counsel Mallison & Martinez are appointed as Class Counsel for settlement purposes.

    d.   Phoenix Class Action Administration Solutions is appointed to act as the Settlement Administrator.

2.  Plaintiffs' Motion is DENIED as to preliminary approval of the settlement and approval of the class notice.

3.  The Parties are ORDERED to submit an amended settlement and notice which address the Court's concerns regarding the PAGA claims within forty-five (45) days.  The amended notice should also clarify the requirements for Class members to dispute the number of workweeks used to calculate their recovery.

IT IS SO ORDERED.

Dated:   **April 4, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – brown20cv01133.prelimapprovalclasssettlement