UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAGARION BROWN, et al.,

              Plaintiffs,

  v.

TETRA TECH, INC., et al.,

              Defendants.

No. 2:20-cv-01133-DJC-DMC

FINAL APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT

On August 12, 2024, the Court granted preliminary approval of the Parties' proposed class, collective, and representative action settlement. Now before the Court is Plaintiffs' unopposed motion for final certification of the settlement class and collective; final approval of the settlement; and award of attorneys' fees, litigation costs, settlement administration fees, and class representative awards. The Court held a final fairness hearing on May 1, 2025. No written or oral objections were asserted.

For the reasons stated below, the Court will grant Plaintiffs' motion and will certify the settlement class and collective; grant approval of the settlement in the amount of $600,000; award class counsel $200,000.00 of the settlement fund in attorneys' fees; grant reimbursement of $12,386.89 in litigation costs; approve $7,000 in administration fees; and grant the request for a $10,000 service award to each of the class representatives.

1    **BACKGROUND**

2           This Court has previously detailed the factual background of this action and

3    settlement terms in its order conditionally certifying the Federal Rule of Civil

4    Procedure 23 ("Rule 23") Class and Fair Labor Standards Act ("FLSA") Collective.  (*See*

5    Conditional Class & Collective Certification Order (ECF No. 53) at 2–4.)  In the interests

6    of judicial economy, the Court incorporates that discussion here.

7           As is relevant, Plaintiffs Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac

8    Saunders, Hakeem Allambie, and Nichlon Garrett seek final approval of their Rule 23

9    class, FLSA collective, and Private Attorney General Act ("PAGA") representative

10   action settlement ("Settlement") on behalf of themselves and similarly situated

11   environmental and geotechnical service workers employed by Defendant Jesco

12   Environmental and Geotechnical Services, Inc. ("Jesco") to perform post-disaster

13   assessments and cleanup in Butte County, California for Defendant Tetra Tech, Inc.

14   ("Tetra") between June 3, 2016 and May 1, 2022 ("Class").  (Mot. Final Approval Class

15   & Collective Settlement (ECF No. 57) at 1, 4.)  There are 194 members of the Class,

16   which includes employees belonging to one or more of the following three subsets:

17   (1) the Rule 23 Class, (2) the PAGA Class, and (3) the FLSA Collective.  (Suppl.

18   Gonzalez Decl. (ECF No. 58-1) ¶¶ 2–10; Settlement (ECF No. 57-3) § I.B.)  Plaintiffs

19   allege, in short, that Defendants failed to provide all Class Members with legally

20   required meal periods.  (Mot. Final Approval Class & Collective Settlement at 1.)

21          After participating in mediation before a third-party neutral, the Parties reached

22   an agreement for a non-reversionary Gross Settlement Amount of $600,000.  (*Id.* at 1–

23   2.)  The Parties request the Settlement be allocated as follows: (1) 1/3 of the total, or

24   $200,000, in attorneys' fees; (2) $12,368.89 in litigation expenses; (3) $10,000 to each

25   of the six Class Representatives; (4) $50,000 to settle Plaintiffs' PAGA claim, $37,500 of

26   which will be paid to the California Labor and Workplace Development Agency

27   ("LWDA") and $12,500 of which will be distributed to PAGA Class Members;

28   (5) $7,000 in fees to the Settlement Administrator; and (6) a Net Settlement Amount of

approximately $270,631.11 for distribution to participating Rule 23 Class and FLSA Collective Members.[1]  (*Id.* at 2.)  Any unclaimed funds will be sent to a *cy pres* beneficiary.  (*Id.*)

On April 4, 2024, the Court conditionally certified the Rule 23 Class and FLSA Collective and, for purposes of settlement, appointed Phoenix Class Action Administration Solutions ("Phoenix") as Class Administrator, Plaintiffs Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac Saunders, Hakeem Allambie, and Nichlon Garrett as Class Representatives, and Mallison & Martinez as Class Counsel. (Conditional Class & Collective Certification Order at 28.)  The Court subsequently granted preliminary approval of the Settlement on August 12, 2024, and also approved of the Notice proposed by the Parties.  (Prelim. Approval Class & Collective Settlement Order (ECF No. 55) at 4.)

Following approval of the Settlement, the Notice was sent to 186 Class Members via first class mail on November 8, 2024.  (Gonzalez Decl. (ECF No. 57-4) ¶ 5.)  To effectuate this mailing, Defense Counsel provided Phoenix with a mailing list for the Class Members ("Class List"), and Phoenix conducted a National Change of Address search to ensure the Class List was accurate.  (*Id.* ¶¶ 3-4.)

After the November 8 mailing, two individuals contacted Phoenix believing that they should have been included in the Class List.  (*Id.* ¶ 6.)  Phoenix confirmed with Defense Counsel that those individuals were inadvertently left off the original Class List, and thereafter added those Class Members to the Class List, increasing the Class size to 188 members.  (*Id.*)  In addition, on January 23, 2025, Phoenix received a data

---

[1] As defined in the settlement, "Participating Class Member" means Rule 23 Class Members who do not timely request exclusion from the settlement and FLSA Collective Members who opt into the FLSA Collective. (Settlement § I.X.)  The Net Settlement Amount will be distributed to Rule 23 Class and FLSA Collective Members on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of workweeks worked by each Class Member during each applicable Class Period.  (*Id.* § III.D.) The pro rata distribution for a Participating Class Member who worked during multiple Class Periods (e.g., a Rule 23 Class Period and an FLSA Class Period) is not exclusive and will be calculated as separate workweek distributions.  (*Id.*)

1    file from Defense Counsel demonstrating there were six additional Class Members

2    who were not included in the November 8 mailing.  (Suppl. Gonzalez Decl. ¶¶ 5-9.)

3    Thus, in total, eight Class Members did not receive the Notice in the initial November

4    8, 2024, mailing.  (*Id.* ¶ 12.)

5        Accordingly, on February 10, 2025, the Parties asked the Court to continue the

6    final approval hearing, which was initially set for February 20, 2025, by 60 days to

7    allow the Parties time to mail the Notice to the eight Class Members left off the Class

8    List and give those Class Members time to object to the Settlement and/or appear at

9    the final approval hearing if desired.  (Suppl. Statement (ECF No. 58) at 1-2.)  The

10   Court granted the Parties' request, directed the Parties to mail the Notice to those

11   Class Members, and reset the final approval hearing for May 1, 2025.  (ECF No. 59.)

12   However, the Court also held a hearing on February 20, 2025, as initially scheduled in

13   the event any Class Member appeared and wished to object to the Settlement.  (*Id.*;

14   *see also* ECF No. 60.)  No Class Member appeared or lodged an objection on that

15   date.

16       On April 10, 2025, Plaintiffs notified the Court that Notice had been sent to all

17   194 Class Members.  (*See* Further Suppl. Statement (ECF No. 62) at 2.)  Of the Notices

18   sent, zero were returned undelivered.  (Gonzalez Decl. ¶ 7; Further Suppl. Gonzalez

19   Decl. (ECF No. 62-1) ¶ 3.)  Concerning the Rule 23 Class, Phoenix received "zero (0)

20   Notices of Objection," "zero (0) Workweek disputes," and "one (1) Request for

21   Exclusion." (Gonzalez Decl. ¶¶ 9-11; Further Suppl. Gonzalez Decl. ¶ 5.)  Concerning

22   the FLSA Collective, Phoenix received 29 Opt-In Forms.  (Gonzalez Decl. ¶ 8; Further

23   Suppl. Gonzalez Decl. ¶¶ 4, 7.)

24       Based on data from Defense Counsel, and factoring in the one request for

25   exclusion, Phoenix calculates that there are 163 Class Members who worked a total of

26   3,825 workweeks during the Rule 23 Class Period, and 193 Class Members who

27   worked a total of 4,249 workweeks during the FLSA Period.  (Suppl. Gonzalez Decl.

28   ¶¶ 6-7; Further Suppl. Gonzalez Decl. ¶ 6.)  Phoenix further calculates that the 29

4

Class Members who returned FLSA Opt-In Forms represent 17.79% of the FLSA Class who worked a collective total of 840 FLSA workweeks.  (Further Suppl. Gonzalez Decl. ¶ 7.)  Based on this, Phoenix calculates that "the highest Individual Settlement Share to be paid is approximately $7,715.74, the lowest Individual Settlement Share to be paid is approximately $58.01, while the average Individual Settlement Share to be paid is approximately $1,660.31."  (*Id.* ¶ 8.)

Additionally, Phoenix notes there are 107 PAGA Class Members who worked a total of 1,725 pay periods during the PAGA Period.  (*Id.* ¶ 9.)  Based on this, Phoenix calculates the "highest Individual PAGA Payment to be paid is approximately $224.64, and the average Individual PAGA Payment to be paid is approximately $116.82."  (*Id.*)

Plaintiffs have now moved for an Order: (1) granting final certification of the Rule 23 Class and FLSA Collective; (2) granting final approval of the Settlement; (3) awarding Class Representative awards; (4) awarding attorneys' fees to Class Counsel; (5) awarding reimbursement of litigation costs; (6) approving payment of settlement administration expenses to Phoenix; (7) approving the payment to the LWDA; and (8) approving Plaintiffs' proposed *cy pres* recipient, Legal Aid at Work. (Mot. Final Approval Class & Collective Settlement at 21.)  On May 1, 2025, the Court held a final fairness hearing, with Hector Martinez appearing for Plaintiffs, Zoe Bekas appearing for Tetra, and Kathrine Roberts appearing for Jesco.  (ECF No. 63.)  The matter was submitted.

## ANALYSIS

## I.  Final Certification of Settlement Class and Collective and Appointment of Class Representatives and Class Counsel

The Court previously provisionally certified the Class for purposes of settlement, finding that the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) had been met.  (Conditional Class & Collective Certification Order at 6–10.) The Court also certified the proposed FLSA Collective because Plaintiffs made a plausible showing they were similarly situated to other Class Members.  (*Id.* at 10–11.)

The Court's findings on the adequacy of the Class and Collective remain the same as there has been no change in the facts underlying the Court's determination and there have been no objections to certification of the Class or Collective. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (collecting cases for the proposition that a court need not repeat its class certification analysis for final approval if the facts have not changed and no objections were raised); *see also Santillan v. Verizon Connect, Inc.*, No. 3:21-cv-1257-H-KSC, 2024 WL 627998, at *4 (S.D. Cal. Feb. 13, 2024) (granting final approval of class and collective where no substantive issues concerning certification had been raised since the court granted preliminary approval). Accordingly, the Court adopts its prior findings and holds that the following Class and Collective are certified for purposes of this settlement:

> *Rule 23 Class*: All persons who were employed by Jesco as non-exempt employees in California and who worked on projects subcontracted by Tetra at any time between June 3, 2016, and May 1, 2022. (Settlement § I.B.1.)

> *FLSA Collective*: All persons who were employed by Jesco as non-exempt employees in the United States who worked on projects subcontracted by Tetra at any time between June 3, 2017, and May 1, 2022. (Settlement § I.B.3.)

For the reasons stated in the prior order, the Court also reaffirms the appointment of Plaintiffs Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac Saunders, Hakeem Allambie, and Nichlon Garrett as Class Representatives and Mallison & Martinez as Class Counsel for the purposes of settlement. (*See* Conditional Class & Collective Certification Order at 27.)

## II.    Adequacy of the Class and Collective Notice

The Court also previously approved both the content of the Notice and the means of distributing the Notice. (Conditional Class & Collective Certification Order at 24–27; Prelim. Approval Class & Collective Settlement Order at 1–3.) The content and means of distribution remain unobjected to and their adequacy as stated in the

Court's prior orders remains clear.  In particular, the Court finds that the Notice is adequate given it provided an explanation of: (1) the claims; (2) the terms of the Settlement; (3) each Class Member's share of the Settlement; (4) release of Class Members' claims; (5) Class Members' rights to opt-out of the Rule 23 Class, opt-in to the FLSA Collective, or object to the Settlement; and (6) details of the final approval hearing.  (*See* Notice (ECF No. 57-4).)  Thus, the Notice "generally describe[d] the terms of the [S]ettlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" and notified tentative Class Members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011); Fed. R. Civ. P. 23(c)(2)(B).  In addition, according to Phoenix, the Notice has now been successfully delivered to all 194 Class Members.  (Further Suppl. Statement at 2.)  Thus, the Court continues to be satisfied with the procedure used to locate Class Members and provide them with the Notice.  *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1).

Given the above, the Court finds that the Parties have provided the Class Members with adequate notice of the Settlement per the Court's order.

### III.    Final Approval of Class Action Settlement

At final approval, the Court must determine if the Settlement, as a whole, is "fair, adequate, and free from collusion."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).  This requires the Court to consider the *Hanlon* factors which are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to

1　the proposed settlement.  *Id.*  Given that settlement here was reached before class

2　certification was formally granted, "settlement approval requires a higher standard of

3　fairness" in order to "ensure that class representatives and their counsel do not secure

4　a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel

5　had a duty to represent."  *Id.* (internal quotations removed).  The Court is also

6　obligated to consider the factors described in *In re Bluetooth* to investigate "more

7　subtle signs that class counsel have allowed pursuit of their own self-interests and that

8　of certain class members to infect the negotiations."  *In re Bluetooth Headset Products*

9　*Liability Litigation ("In re Bluetooth")*, 654 F.3d 935, 946–47 (9th Cir. 2011).  In so

10　doing, however, the Court is "mindful that the law favors the compromise and

11　settlement of class action suits."  *Carlin*, 380 F. Supp. 3d at 1009.

12　　　**A.  The Strength of Plaintiffs' Case**

13　　　In evaluating the strength of a case, the Court must "evaluate objectively the

14　strengths and weaknesses inherent in the litigation and the impact of those

15　considerations on the parties' decisions to reach these agreements*." In re Wash. Pub.*

16　*Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  The Court

17　need not, however, "reach any ultimate conclusions concerning the contested issues

18　of fact and law" regarding the underlying dispute.  *Id.* at 1415.

19　　　As this Court has previously observed, there were several weaknesses with

20　Plaintiffs' case which justified settling their claims.  (*See* Conditional Class & Collective

21　Certification Order at 13–14.)  For example, at the time of settlement, the *Naranjo v.*

22　*Spectrum Security Services, Inc.*, 13 Cal. 5th 93 (2022) matter had not yet been

23　decided by the California Supreme Court, leaving open the question of whether

24　Plaintiffs' meal break claim would support awards of wage statement and waiting time

25　violations under *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) and

26　*Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012).  However, as Plaintiffs

27　explained, by the time that decision issued, the Parties were well into the process of

28　finalizing the Settlement and were doubtful that the decision would have supported a

1  belated request by Plaintiffs for an increase in the settlement amount.  (Conditional

2  Class & Collective Certification Order at 13.)  Additionally, even if Plaintiffs had

3  prevailed on their wage and break violation claims, they faced legal obstacles in

4  obtaining other derivative damages and penalties if, for example, this Court declined

5  to enter a finding of "willfulness" regarding Defendants' untimely payment of wages to

6  severed employees, foreclosing any recovery under Labor Code section 203.  (*Id.* at

7  14.)

8        The Court finds no reason to revisit its prior observations concerning the

9  weaknesses in Plaintiffs' case.  Thus, the Court finds that this factor weighs in favor of

10  approving the Settlement.

11        **B.  The Risk, Expense, Complexity, and Likely Duration of Further**

12            **Litigation and Risk of Maintaining Class Action Status Through Trial**

13        In general, lengthy litigation can be costly and time consuming for all parties

14  and presents numerous risks.  Because of this, courts recognize that "approval of

15  settlement is preferable to lengthy and expensive litigation with uncertain results."

16  *Carlin*, 380 F. Supp. 3d at 1010 (internal citations and quotations removed).

17        Here, the Settlement guarantees monetary recovery by all Class Members,

18  including those without the means to secure legal representation and those for whom

19  pursuing and obtaining relief would otherwise not be cost effective.  Extended

20  litigation, on the other hand, presents numerous risks including expensive and lengthy

21  legal battles between the Parties over discovery, motions for summary judgment, trial,

22  and more.  The substantial reduction in attorneys' fees and costs alone is a major boon

23  to all Parties.  In addition, at the time that the Parties agreed to the Settlement, the

24  Court had not yet granted class certification, so Plaintiffs faced the risks inherent in

25  certifying a class and maintaining that certification through trial.  Finally, it is well

26  recognized that judicial policy favors settlement in class action litigation due to the

27  lengthy and expensive nature of such litigation.  *See Pilkington v. Cardinal Health, Inc.*

28

1  *(In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecomms.*

2  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

3       As such, these factors weigh in favor of granting final approval.

4       **C.  The Amount Offered in Settlement**

5       In determining whether a settlement agreement is substantively fair to the class,

6  courts must balance the value of plaintiffs' expected recovery against the value of the

7  settlement offer.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

8  2007).  However, the Ninth Circuit has explained that "the proposed settlement is 'not

9  to be judged against a hypothetical or speculative measure of what might have been

10  achieved by the negotiators.'"  *Martinez v. Semi-Tropic Coop. Gin & Almond Huller*,

11  Inc., No. 1:19-CV-1581-JLT-CDB, 2023 WL 3569906, at *14 (E.D. Cal. May 19, 2023)

12  (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688

13  F.2d 615, 625 (9th Cir. 1982) (citations omitted)).  In addition, the "absence of a large

14  number of objections to a proposed class action settlement raises a strong

15  presumption that the terms of a proposed class action settlement are favorable to the

16  class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525.

17       As previously explained by Plaintiffs, before reaching settlement, they obtained

18  Defendants' payroll and timekeeping information and performed detailed expert

19  analysis thereon to calculate total damages, penalties, and interest at $1,354,302.

20  (Conditional Class & Collective Certification Order at 12–13.)  Thus, the Gross

21  Settlement Amount, $600,000, represents approximately 44% of the theoretical

22  maximum recovery.  Further, Plaintiffs explain that each Participating Class Member

23  will receive, on average, approximately $1,660.31 in settlement shares for their Rule

24  23 Class and FLSA Collective claims, and that each PAGA Class Member will receive

25  approximately $116.82 for settlement of their PAGA claims.  This Settlement is

26  reasonable when compared with other wage and hour settlements approved in recent

27  years by California federal courts.  *See, e.g., Sarabia v. Ricoh USA, Inc.*, No. 820–CV–

28  00218–JLS–KES, 2023 WL 3432160, at *1, 5 (C.D. Cal. May 1, 2023) (finding wage and

1  hour class action settlement with an average net payout of $1,119 per class member

2  reasonable); *Mondrian v. Trius Trucking, Inc.*, No. 119–CV–00884–ADA–SKO, 2022

3  WL 6226843, at *6 (E.D. Cal. Oct. 7, 2022) (determining wage and hour class and

4  collective action settlement reasonable where average class member received

5  $1,528.81); *see also Glass v. UBS Fin. Servs., Inc.*, No. C–06-4068–MMC, 2007 WL

6  221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009)

7  (approving settlement of wage and hour claims where settlement amount represented

8  25-35% of the maximum estimated damages).

9      Thus, this Settlement is a good result for the Class and eliminates the risks,

10  expenses, and delay associated with continued litigation.  Indeed, only one Class

11  Member has opted out of the Settlement, and no objections have been filed.  Given

12  the lack of objections and the presence of only a singular opt-out, the Court presumes

13  that the terms of the Settlement are favorable to the Class Members.

14      Thus, this factor weighs in favor of approval.

15  **D. The Extent of Discovery Completed and the Stage of the Proceedings**

16      While discovery can be beneficial in obtaining a fair settlement, "[i]n the context

17  of class action settlements, formal discovery is not a necessary ticket to the bargaining

18  table where the parties have sufficient information to make an informed decision

19  about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

20  1998) (internal citations and quotations removed).  To that end, a court may approve a

21  proposed class settlement where the parties obtained sufficient discovery "[to] allow[]

22  the parties to form a clear view of the strength and weaknesses of their case[,]"

23  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013), and is the

24  result of genuine arms-length negotiation, *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at

25  528.

26      Here, Plaintiffs state that they engaged in "extensive" discovery prior to settling.

27  (Mot. Final Approval Class & Collective Settlement at 8.)  Notably, Defendants

28  produced time and payroll data which allowed Plaintiffs to engage a database expert

1    to review and analyze the records prior to settlement negotiations, putting the Parties

2    in an "excellent position to assess the strengths and weaknesses of the case, as well as

3    its value." (Mallison Decl. (ECF No. 57-2) ¶ 16.) Plaintiffs also represent that the

4    settlement was reached after arms-length negotiations. This is supported by the

5    involvement of a third-party neutral for purposes of mediation. *See Adoma v. Univ. of*

6    *Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (finding a settlement was the

7    result of arms-length negotiation when conducted by an experienced mediator).

8    Finally, even after the mediation, the Parties continued to negotiate for several months

9    in order to reach the final terms of settlement. (Mot. Final Approval Class & Collective

10   Settlement at 4.)

11        Given the apparent sufficiency of the discovery obtained and the clear arms-

12   length negotiations, this factor weighs in favor of approval.

13        **E.  The Experience and Views of Counsel**

14        As previously noted by the Court, Class Counsel are experienced in litigating

15   employee class action suits across California. (Conditional Class & Collective

16   Certification Order at 27.) "Parties represented by competent counsel are better

17   positioned than courts to produce a settlement that fairly reflects each party's

18   expected outcome in litigation." *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*, 47

19   F.3d 373, 378 (9th Cir. 1995). Given Class Counsel's apparent experience and view

20   that this settlement is "fair, adequate, and reasonable," (Mallison Decl. ¶ 19), the Court

21   finds that this factor weighs in favor of approval.

22        **F.  The Presence of a Government Participant and Reaction of the Class**

23            **Members to the Proposed Settlement**

24        As previously discussed, there is a strong presumption of favorableness in the

25   absence of many objections to a settlement. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D.

26   at 525. Here, there are no objections to the Settlement, and only one Class Member

27   has opted-out. Class Counsel also previously notified the LWDA of the Settlement on

28

1  January 26, 2024, and they have not objected.  (Mot. Final Approval Class & Collective

2  Settlement at 11.)

3         Thus, these factors weigh in favor of approval of the Settlement.

4         **G.  Absence of Collusion**

5         In addition to the *Hanlon* factors, the Court must also consider whether the

6  Settlement is the product of collusion.  *See In re Bluetooth*, 654 F.3d at 946–47.  The

7  three signs of collusion identified by the Ninth Circuit are "(1) when counsel receive a

8  disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear

9  sailing' arrangement (i.e., an arrangement where defendant will not object to a certain

10 fee request by class counsel); and (3) when the parties create a reverter that returns

11 unclaimed fees to the defendant."  *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir.

12 2015) (internal quotations and citations removed).

13        Here, there is no evidence of overt misconduct nor any indication of collusion.

14 The requested attorneys' fees, while somewhat high, are reasonable considering the

15 record and extensive time spent by Class Counsel and the results achieved.  *See infra*

16 Section VI.A.  There is also no "clear sailing" agreement.  (*See* Conditional Class &

17 Collective Certification Order at 14 ("While the settlement initially contained a clear

18 sailing provision, the Parties removed this provision from their agreement in response

19 to the Court's previous order.").)  The $10,000 Class Representative incentive award is

20 also fair and reasonable and does not appear to be the result of collusion.  *See infra*

21 Section VI.C.  And, finally, none of the funds will revert to Defendants.  (Settlement

22 § III.D.5.)

23        After considering all applicable factors, the Court concludes the Settlement is

24 "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

25 **IV.    Final Approval of FLSA Collective Settlement**

26        The Settlement releases claims under the FLSA.  (Settlement § III.H.2.b.)  FLSA

27 claims can be settled only with the supervision and approval of the United States

28 Department of Labor or a federal district court.  *See Lynn's Food Stores, Inc. v. United*

1  *States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Ambrosino v. Home Depot U.S.A.,*

2  *Inc.*, No. 11cv1319-L-MDD, 2014 WL 3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014)

3  (collecting cases indicating that "district courts in the Ninth Circuit have followed

4  *Lynn's Food Stores*").  A settlement warrants approval if it "reflect[s] a reasonable

5  compromise of disputed issues." *Lynn's Food Stores*, 679 F.2d at 1354.

6          First, the Court must determine whether there is a bona fide dispute over

7  Defendants' FLSA liability.  *See id.*  As the Court previously found, this settlement

8  represents a reasonable resolution of a bona fide dispute.  (Conditional Class &

9  Collective Certification Order at 18.)  In particular, Plaintiffs alleged they and other

10  Class Members were required to work off-the-clock without compensation, which

11  would have given rise to claims under the FLSA.  (*Id.*)  However, Plaintiffs lacked

12  concrete records to substantiate these allegations, which diminished the strength and

13  value of their claims.  (*Id.*)  The Parties have presented no reason to reconsider these

14  findings.  Therefore, the Court finds that there is a bona fide dispute as to the extent

15  and value of Plaintiffs' FLSFA claims.

16          Second, the Court considers whether the compromise is fair and reasonable.

17  The Court previously found that the Settlement was fair and reasonable considering

18  the value of Plaintiffs' FLSA claims.  (*Id.* at 18–19.)  The Court finds no reason to

19  reconsider that holding now, particularly given that each Participating Class Member

20  will recover, on average, $1,660.31, a respectable sum.  (Suppl. Gonzalez Decl. ¶ 10.)

21  Based on these factors, the Court finds that the settlement is reasonable and provides

22  meaningful relief given the inherent risks in continued litigation over the issues

23  disputed in this action.

24          As such, the Court approves the Settlement as it pertains to the Class Members'

25  FLSA claims.

26  **V.     Final Approval of PAGA Penalties**

27          The Settlement also resolves claims brought under PAGA.  (Settlement

28  § III.H.2.a.)  "A PAGA representative action is . . . a type of qui tam action" where a

14

1  private plaintiff pursues a dispute between an employer and the California LWDA as

2  the proxy or agent of the state.  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d

3  959, 971 (N.D. Cal. 2019); Cal. Lab. Code § 2699(a).  "[B]ecause a settlement of PAGA

4  claims compromises a claim that could otherwise be brought by the state," courts

5  must "review and approve any [PAGA] settlement."  *Ramirez v. Benito Valley Farms,*

6  *LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); Lab.

7  Code § 2699(s).  Proposed settlements must also be submitted to the LWDA.  Lab.

8  Code § 2699(s).  No binding authority sets forth the proper standard of review for

9  PAGA settlements; however, California district courts often apply "a Rule 23-like

10  standard, asking whether the settlement of the PAGA claims is 'fundamentally fair,

11  adequate, and reasonable in light of PAGA's policies and purposes.'"  *Arredondo v.*

12  *Sw. & Pac. Specialty Fin., Inc.*, No. 118CV01737DADSKO, 2022 WL 2052681, at *9

13  (E.D. Cal. June 7, 2022) (quoting *Haralson*, 383 F. Supp. 3d at 972).

14       Here, the Settlement Agreement provides for $50,000 in civil PAGA penalties.

15  (Settlement § III.B.3.)  Pursuant to PAGA, 75% of the civil PAGA penalties, or $37,500,

16  will go to the LWDA, and 25%, or $12,500, will be distributed proportionally to all

17  PAGA Class Members.  (*Id.;*) *see also* Lab. Code § 2699(i) (West 2024).[2]  The Court

18  previously found that the PAGA settlement was reasonable, fundamentally fair, and

19  adequate.  (Conditional Class & Collective Certification Order at 20–21.)  The Court

20  finds no reason to revisit this holding given that there have been no objections from

21  the LWDA or Class Members regarding the allocation of PAGA penalties.  (Gonzalez

22  Decl. ¶ 10; Mot. Final Approval Class & Collective Settlement at 11.)

23       Therefore, the Court approves the Settlement's $50,000 PAGA penalty,

24  including the payment of $37,500 to the LWDA.

25  ////

26

27  [2] California recently updated these ratios such that 65% of PAGA penalties are now allocated to the
LWDA, and 35% are allocated to aggrieved employees.  *See* Lab. Code § 2699(m).

28

1  **VI.    Approval of Attorneys' Fees, Costs, and Incentive Payment to Class**
2  **Representative**

3      **A.    Attorneys' Fees**

4      Courts may generally award Class Counsel attorneys' fees when approving

5  settlement of a class action.  However, "courts have an independent obligation to

6  ensure that the award, like the settlement itself, is reasonable, even if the parties have

7  already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  Courts analyze the

8  reasonableness of attorneys' fees based on either a percentage of the fund analysis or

9  the lodestar method.  Under the percentage of the fund method, the court may award

10 class counsel a percentage of the common fund recovered for the class; in the Ninth

11 Circuit, the benchmark is 25%. *Id.* at 942; *Hanlon*, 150 F.3d at 1029 ("This circuit has

12 established 25% of the common fund as a benchmark award for attorney fees.").

13 "Selection of the benchmark or any other rate must be supported by findings that take

14 into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290

15 F.3d 1043, 1048 (9th Cir. 2002).  With the lodestar method, the court multiples the

16 number of hours the prevailing party reasonably spent litigating the case by a

17 reasonable hourly rate for counsel. *In re Bluetooth*, 654 F.3d at 941.  The product of

18 this computation, the lodestar amount, yields a "presumptively reasonable" fee. *Id.*

19 The Ninth Circuit has recommended that district courts apply either the percentage of

20 the fund method or the lodestar method but cross-check the appropriateness of the

21 determined amount by employing the other. *Id.* at 944.  Here, the Court will consider

22 the percentage of the fund method and cross-check this amount with the lodestar fee.

23     Class Counsel request $200,000 in attorneys' fees, which represents 33.3% of

24 the Gross Settlement Amount.  Thus, Class Counsel's request is higher than the

25 benchmark.  When assessing whether the percentage requested is reasonable, courts

26 look to factors such as (1) the results achieved; (2) the risk of litigation; (3) the skill

27 required, (4) the quality of work; (5) the contingent nature of the fee and the financial

28 burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047; *Six*

1   *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).  These

2   factors support Class Counsel's requested award here.

3          First, Class Counsel obtained a settlement of over half a million dollars for a

4   small class of less than 200 employees, providing a very respectable recovery for

5   Class Members.  (*See* Mot. Final Approval Class & Collective Settlement at 16–17.)  In

6   addition, as in any class action, there were inherent risks that no class would be

7   certified and/or no recovery would be obtained.  (*Id.* at 17–18.)  Further, Class Counsel

8   are well seasoned class action wage and hour litigators who utilized their experience

9   when investigating Plaintiffs' claims and developing a damages analysis to convince

10  Defendants of their litigation exposure, steps essential to achieving settlement.  (*Id.* at

11  18.)  Class Counsel also performed this work on an entirely contingent fee basis and

12  bore all litigation expenses upfront.  (*Id.*)  Finally, the requested fee award is in line

13  with what other district courts in this circuit have awarded in cases where class counsel

14  took the case on contingency and no class member objected to the settlement.  *See,*

15  *e.g., Anthony Ayala v. U.S Xpress Enterprises, Inc. et al.*, No. EDCV 16-137-GW-KKX,

16  2023 WL 6559786, at *7 (C.D. Cal. Sept. 15, 2023) (approving 33% fee award in wage

17  and hour class action where class counsel took the case on contingency and no class

18  member objected or opted out of the settlement); *Ochinero v. Ladera Lending Inc.*,

19  No. SACV191136JVSADSX, 2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021)

20  (approving 33% fee award from common fund settlement where counsel took the

21  case on contingency and no class member objected); *see also Arredondo*, 2022 WL

22  2052681, at *12–15 (approving 30% fee award from common fund wage and hour

23  settlement where counsel took the case on contingency and there were no

24  "objections to the settlement or requests for exclusions").  Thus, the Court finds Class

25  Counsel's requested fees, although high, are reasonable under the percentage of the

26  fund analysis.

27         Finally, as a cross-check, Class Counsel represents that the fees calculated

28  under the lodestar method would be $220,683, representing 406.7 hours spent

1   litigating this action.  (Mallison Decl., Ex. 11 (ECF No. 57-13).)  Thus, the amount Class

2   Counsel requests, $200,000, is lower than what Class Counsel would receive under

3   the lodestar method.

4        Accordingly, the Court concludes that the request for fees is reasonable and

5   grants Class Counsel $200,000 in attorneys' fees.

6        **B.**    **Costs**

7        Class Counsel is entitled to reimbursement of litigation costs from the Gross

8   Settlement Amount in order to spread the costs of the suit amongst Class Members.

9   *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002).  "Such an award of

10  expenses should be limited to typical out-of-pocket expenses that are charged to a

11  fee paying client and should be reasonable and necessary."  *In re Immune Response*

12  *Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (E.D. Cal. 2007).

13       Here, Class Counsel seeks to recover costs for (1) $400 in "Court Fees,"

14  (2) $9,000.00 in "Mediation Fees," (3) $ 2,662.50 for "Telswitch Professional Services,"

15  the analysis of Defendants' payroll and timekeeping records, (4) $75 for "Payment to

16  LWDA," and (5) $249.39 in "Westlaw Research Fees."  (Mallison Decl., Ex. 12 (ECF No.

17  57-14).)  Each of these requested costs falls within those that courts typically approve.

18  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1177–78.

19       Accordingly, the Court will grant Class Counsel's request for reimbursement of

20  $12,386.89 in costs incurred while litigating this matter.

21       **C.**    **Class Representative Service Award**

22       Courts often afford modest compensation to class representatives based on the

23  extra time required to represent the class as named plaintiffs to an action.  "The

24  criteria courts may consider in determining whether to make an incentive award

25  include: 1) the risk to the class representative in commencing suit, both financial and

26  otherwise; 2) the notoriety and personal difficulties encountered by the class

27  representative; 3) the amount of time and effort spent by the class representative;

28  4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed

1  by the class representative as a result of the litigation." V*an Vranken v. Atl. Richfield*

2  *Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

3  Here, the proposed settlement includes a request for a $10,000 service award

4  for each of the Class Representatives.  This award falls within the range of other

5  service awards for class representatives.  *See Bellinghausen v. Tractor Supply Co.*, 306

6  F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to

7  $10,000.").  The Class Representatives attest that they spent significant time assisting

8  Class Counsel in investigating and substantiating the claims alleged in this action;

9  preparing the complaint; producing evidentiary documents; and engaging in

10  settlement negotiations.  (Mot. Final Approval Class & Collective Settlement at 20; *see*

11  *also* Allambie Decl. (ECF No. 57-7); Brown Decl. (ECF No. 57-8); Garrett Decl. (ECF

12  No. 57-9); Jackson Decl. (ECF No. 57-10); I. Saunders Decl. (ECF No. 57-11); Y.

13  Saunders Decl. (ECF No. 57-12).)  The Class Representatives also accepted the

14  possible stigma and risk of retaliation from having their names attached to this action.

15  Based on the effort and risk undertaken by the Class Representatives in

16  reaching this Settlement and the presumptively reasonable amount of this award, the

17  Court finds that the requested service awards are reasonable and awards Plaintiffs

18  Lagarion Brown, Roy Jackson, Yaphett Saunders, Isaac Saunders, Hakeem Allambie,

19  and Nichlon Garrett $10,000 each for their roles as Class Representatives.

20  **VII.    Approval of *Cy Pres* Recipient**

21  Per the terms of the Settlement, any residual funds resulting from undeliverable

22  or uncashed settlement checks will be disbursed to a suitable *cy pres* beneficiary.

23  (Settlement § III.E.6.)  Plaintiffs propose Legal Aid at Work, "a 501(c)(3) non-profit

24  organization which assists indigent workers with employment law claims."  (Mallison

25  Decl. ¶ 24.)  The Court finds this proposal satisfactory and will grant Plaintiffs' request.

26  ////

27  ////

28  ////

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED:

1.  This Order incorporates by reference the definitions in the operative Settlement as though fully set forth herein, and all terms defined therein shall have the same meaning as set forth in the Settlement (*see* ECF No. 57-3);

2.  This Court has jurisdiction over the claims of the Class Members asserted in this proceeding, personal jurisdiction over Plaintiffs and Defendants and the Class Members as defined in the Settlement, and subject matter jurisdiction to approve the Settlement;

3.  Plaintiffs' Motion for Final Approval of Class, Collective, and Representative Action Settlement (ECF No. 57) is GRANTED;

4.  The Class and Collective as defined in the Settlement (ECF No. 57-3 § I.B) are CERTIFIED for settlement purposes;

5.  The Court finds the Notice provided to the Class Members was reasonable, was the best notice practicable under the circumstances, and was valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law;

6.  The Court finds the Settlement in the Gross Settlement Amount of $600,000 is fair, reasonable, and adequate and the result of arm's-length informed negotiations; thus, the terms set forth in the Settlement are APPROVED.  The Parties are hereby ORDERED to implement and comply with the terms of the Settlement;

7.  The Court finds that the releases in the Settlement are appropriate.  All Participating Rule 23 Class and FLSA Collective Members and Plaintiffs are bound by the releases as set forth in the Settlement (*see* ECF No. 57-3 § III.H).  Further, all PAGA Class Members will release Defendants and the

1  Released Parties from all PAGA claims for civil penalties alleged as set forth

2  in the Settlement (*see id.*);

3 8. The Court appoints Plaintiffs Lagarion Brown, Roy Jackson, Yaphett

4  Saunders, Isaac Saunders, Hakeem Allambie, and Nichlon Garrett as the

5  Class Representatives for settlement purposes only.  The Class

6  Representatives are each awarded $10,000 pursuant to the terms of the

7  Settlement and for their services as Class Representatives;

8 9. The Court appoints Mallison & Martinez as Class Counsel for settlement

9  purposes only.  Class Counsel is awarded one-third (1/3) of the Gross

10  Settlement Amount, amounting to $200,000, in attorneys' fees and

11  $12,386.89 in costs for their work incurred in prosecuting this case.  Each

12  Party shall bear their own costs and attorneys' fees beyond those provided

13  by the Settlement;

14 10. Phoenix Class Action Administration Solutions is awarded $7,000 for its

15  services as the Settlement Administrator and shall carry out its remaining

16  obligations under the Settlement;

17 11. The Court approves $50,000 of the Gross Settlement Amount to resolve

18  PAGA claims with 75% of that portion ($37,500) to be paid to the Labor and

19  Workforce Development Agency ("LWDA") as their share of the settlement

20  for the civil penalties alleged and 25% ($12,500) to be distributed to the

21  PAGA Class Members as their statutory share of the PAGA penalties.

22  Pursuant to Labor Code section 2699(s)(3), Plaintiffs shall submit a copy of

23  this judgment to the LWDA within ten (10) calendar days of its execution

24  and entry by the Court;

25 12. The Court finds that Legal Aid at Work is a 501(c)(3) non-profit organization

26  which assists indigent workers with employment law claims.  To the extent

27  there remain any unclaimed settlement funds remaining from uncashed

28  settlement checks, the Court approves Legal Aid at Work as an appropriate

*cy pres* beneficiary and directs payment of such funds thereto.  No

settlement funds shall revert to Defendants;

13. Within seven (7) business days after final disbursement of all amounts from the Gross Settlement Fund, the Settlement Administrator will serve on the Parties and file with the Court a declaration providing a final report on the disbursements of all funds;

14. By means of this Final Approval Order, this Court hereby enters final judgment as to Defendants in this action, binding each Participating Class Member and operating as a full release and discharge of Settled Claims;

15. The Court retains jurisdiction to consider all further issues arising out of or in connection with the Settlement;

16. Notice of entry of this Order and the ensuing final judgment shall be given to Class Counsel on behalf of Plaintiffs and all Participating Class Members. It shall not be necessary to send notice of entry of this Order or the ensuing final judgment to Class Members.

Dated:  May 13, 2025

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE